STANLEY E. YOUNGS, JR. AND LINDA G. YOUNGS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Youngs v. Commissioner
Docket No. 28253-92
United States Tax Court
T.C. Memo 1995-94; 1995 Tax Ct. Memo LEXIS 94; 69 T.C.M. (CCH) 2032; March 6, 1995, Filed *94 Decision will be entered for respondent. Stanley E. Youngs, Jr., pro se. For respondent: James R. Robb. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined deficiencies in petitioners' Federal income taxes for 1986, 1987, and 1988 in the amounts of $ 1,448, $ 1,510, and $ 2,113, respectively. Respondent also determined additions to tax under section 6651(a)(1) for petitioners' taxable years 1986 and 1987 in the respective amounts of $ 362 and $ 378. After concessions by petitioners, [2] the sole issues for decision are: (1) Whether payments received by Stanley E. Youngs, Jr. (petitioner), from National Maintenance Contractors, Inc. (National), were for services rendered by petitioner as an employee or an independent contractor; *95 and (2) whether petitioners are liable for the additions to tax for untimely filing a return under section 6651(a)(1). Petitioners resided in Snohomish, Washington, at the time their petition was filed. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioner graduated from the University of Washington in 1977, receiving a bachelor of arts degree in business with an emphasis in accounting. After working as a staff accountant for Price Waterhouse for 3 years, petitioner sought positions in public accounting and with private firms. He later established his own practice. In December *96 1985, National, a janitorial services corporation, sought petitioner's services to assist with various financial tasks. Petitioner was hired on a job-by-job basis and paid $ 20 per hour. In January 1986, the comptroller of National resigned and petitioner accepted National's offer to assume the duties of the position, including supervision of three financial assistants. During 1986, petitioner spent an average of 20 hours each week working on National assignments, both from National's offices and his personal residence. In 1987 and 1988, the tasks performed by petitioner remained constant, but the time he spent on the work increased to 40 hours per week. During each of the years at issue, petitioner continued to prepare individual and corporate tax returns for his personal clients. National paid petitioner an hourly wage until September 1989, at which time he accepted National's offer of employee status with an annual salary. For each year at issue, National issued petitioner a Form 1099-MISC, reporting the annual amount paid to petitioner. No Federal or State taxes were withheld from petitioner's payments. On his 1986 through 1988 Federal income tax returns, petitioner reported *97 the payments he received from National on his Schedule C as trade or business income. Petitioners filed their 1986 Federal income tax return on July 26, 1990, and their 1987 return on July 30, 1990. At some point in 1990, respondent commenced an examination of National. In the course of this examination, the issue was raised as to whether petitioner was an employee or independent contractor. Shortly thereafter, petitioners received a notice of proposed increases in their personal income and employment tax liabilities based on, among other things, respondent's contention that petitioner was an employee. Petitioners responded with a letter dated October 29, 1991, in which they argued petitioner was an independent contractor: (1) Prior to becoming a full-time employee and the controller for NMCI [National] in September 1989, Youngs [petitioner] had worked independently and on a job by job basis in performing accounting related services for NMCI. Although he derived the majority of his income from NMCI, a considerable amount of his time was spent in connection with the business for which he was a general partner, and servicing other independent clients. He performed services *98 for NMCI, both on its premises and at home. NMCI was only concerned with the results of his work, not the manner and means in which he performed it. In light of these circumstances, we submit that it is entirely reasonable to view Youngs as having an independent contractor relationship with NMCI.
Petitioners were successful in their challenge to respondent's proposed changes. In the notice of deficiency in the instant case, respondent determined that petitioner was an independent contractor during the years at issue, and, therefore, is liable for self-employment taxes. Petitioner argues that he was an employee during the years at issue, and, therefore, the payments from National should be treated as wages not subject to self-employment tax. The determination of respondent is presumed to be correct, and petitioner bears the burden of proving that respondent erred in her determination. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Whether a taxpayer is an independent contractor or an employee is decided after examining relevant facts and circumstances and applying common-law principles. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318,     (1992); *99 Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988). The relevant factors in determining the substance of an employment relationship include: (1) The degree of control exercised by the principal over the details of the work; (2) the taxpayer's investment in facilities; (3) the taxpayer's opportunity for profit or loss; (4) permanency of the relationship between the parties; (5) the principal's right of discharge; (6) whether the work performed is an integral part of the principal's business; (7) what relationship the parties believe they are creating; and (8) the provision of employee benefits. NLRB v. United Ins. Co., 390 U.S. 254, 258 (1968); United States v. Silk, 331 U.S. 704, 716 (1947); Garrett v. Phillips Mills, Inc., 721 F.2d 979, 981 (4th Cir. 1983); sec. 31.3121(d)-1(c)(2), Employment Tax Regs. (setting forth criteria for identifying common-law employees). No one factor is determinative, rather all the incidents of the relationship must be assessed and weighed. *100 Community for Creative Non-Violence v. Reid, 490 U.S. 730, 752 (1989). The factors should not be weighed equally, but should be weighed according to their significance in the particular case. Aymes v. Bonelli, 980 F.2d 857, 861 (2d Cir. 1992). We will now address the eight relevant factors mentioned above as they relate to the facts in the case. 1. Degree of Control The alleged employer's degree of control over the details of a taxpayer's work is the most important factor in determining if a common-law employment relationship exists. See Matthews v. Commissioner, 92 T.C. 351, 361 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990). In Reed v. Commissioner, 13 B.T.A. 513, 520 (1928), revd. and remanded 34 F.2d 263 (3d Cir. 1929), revd. per curiam 281 U.S. 699 (1930), the Board of Tax Appeals stated: "the crucial test lies in the right of control, or lack of it, which the employer may exercise respecting the manner in which the service is to be performed and the means to be employed *101 in its accomplishment, as well as the result to be attained." This test is still the master test of an employment relationship. Matthews v. Commissioner, supra at 361; Hawkins v. Commissioner, T.C. Memo. 1993-350. The employment tax regulations state this factor as follows: Generally the relationship of employer and employee exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so.
Sec. 31.3401(c)-(1)(b), Employment Tax Regs. "Where the inherent nature of the job mandates an independent approach, a lesser degree of control exercised by the principal may result in a finding of an employer-employee *102 status." Potter v. Commissioner, T.C. Memo. 1994-356. In the instant case, petitioner performed accounting and financial services for National. Petitioner testified that National was concerned primarily with the results of his work, not the means and manner in which the work was accomplished. While petitioner concedes that this indicates an independent contractor status, he contends that the reason National was not interested in the manner in which he performed his duties was that the owner of National had no expertise in the field of accounting, and, therefore, was unable to supervise petitioner in that manner. According to his testimony, petitioner was the only person at National with the expertise to analyze the financial data and prepare financial reports. Petitioner testified that he reported to the owner of National on a regular basis to discuss the results of his work and the priority of other tasks to be assigned. Petitioner was originally hired on a job-by-job basis. He was not required to work a set number of hours or on certain days of the week, as long as the tasks assigned were completed. While petitioner may have assumed more responsibilities *103 after the departure of National's comptroller, he performed the same tasks and was paid in the same manner until he was offered employee status in September 1989. Based on petitioner's testimony, we find that National was primarily interested in the finished project and did not control petitioner's manner or means of accomplishing results. We also find it significant that in October 1991, petitioner successfully argued that he was an independent contractor based on, inter alia, National's lack of direct control over his work. 2. Investment in Facilities Petitioner testified that he worked from his home as well as from National offices. All supplies required by petitioner for National projects were provided by National; however, petitioner also maintained an office in his home where he performed work for National as well as other clients. 3. Opportunity for Profit or Loss The amount of pay petitioner received from National depended upon the hours he worked. Payment on an hourly basis is consistent with an employer-employee relationship. See Laraway v. Commissioner, T.C. Memo. 1992-705. However, petitioner was hired on a job-by-job basis and *104 payment by the job is consistent with an independent contractor relationship. 4. Permanency of the Relationship Petitioner was originally hired by National to perform certain specific projects. After the departure of National's comptroller, petitioner's relationship with National became more permanent in that National came to rely on petitioner for its financial reporting needs. Nevertheless, it was not until September 1989, that National offered petitioner a permanent employee position and an annual salary. 5. Right of Discharge During the years at issue, there was no written agreement between National and petitioner regarding petitioner's duties and responsibilities. Petitioner testified that his brother-in-law, the owner of National, "could let me go at any time, I could leave at any time, provided something came up. So he had the right to discharge me, and I had the right to leave." However, as a practical matter, it is unlikely that National would have discharged petitioner, or petitioner would have left in the middle of a project. 6. Integral Part of Business National is a corporation that provides janitorial services to various office buildings through franchising *105 agreements. Although petitioner argues that he was an integral part of National as its comptroller, we find that the services provided by petitioner are of the nature often provided by outside individuals or firms. The integral part of National's business was janitorial services, not financial reports. 7. Relationship the Parties Believed They Had Created Petitioner testified that "when we first got started in December and January, I was -- I was, number one, keen on staying as an independent contractor because I wanted to develop my own practice." For each of the years at issue, National reported the payments to petitioner on a Form 1099-MISC and did not withhold Federal or State income or employment taxes. Petitioner reported these payments on his Schedules C as trade or business income, not as wages. As late as October 1991, during the course of an audit of National by the IRS, petitioner took the position that he was an independent contractor. Petitioner testified that "my personal feeling is [sic] of what an independent contractor is and what an employee is, is one thing. And my conclusion all through those years had been that I was independent." Petitioner explained *106 at trial that it was not until he received the notice of deficiency in the instant case that he decided that he was an employee and, therefore, not subject to self-employment tax. We find it quite clear that during the years in question, National and petitioner believed they had an independent contractor relationship. 8. Provision of Employee Benefits Petitioner provided little evidence regarding his receipt of employee benefits including vacation pay, medical insurance, life insurance, or pension funds. He did testify that business and travel expenses were reimbursed; however, he failed to indicate whether such expenses were necessary for him to fulfill his obligations under his agreement with National. As stated above, petitioner bears the burden of showing that respondent's determination is erroneous. Rule 142(a). Because we are unable and unwilling to guess about these matters, we place little weight on this factor. Petitioner cites two cases, NLRB v. United Ins. Co., 390 U.S. 254, 258 (1968) and United States v. Silk, 331 U.S. 704, 716 (1947), in support of his position that he was an employee during the years *107 at issue, despite his earlier contention that he was an independent contractor. These cases stand for the position that whether a taxpayer is an employee or an independent contractor depends upon several factors, and no single factor should be determinative. Based on the entire record in this case, we find that petitioner was an independent contractor of National during the years at issue. Respondent determined that petitioners are liable for the addition to tax under section 6651(a)(1) for filing their 1986 and 1987 Federal income tax returns after the due date. As stated, the 1986 and 1987 returns were filed on July 26, 1990, and July 30, 1990, respectively. The due dates for petitioners' returns were not extended. Section 6651(a)(1) provides for an addition to tax in the amount of 5 percent of the amount of the tax if the failure to file is for not more than 1 month, with an additional 5 percent for each month in which the failure to file continues, to a maximum of 25 percent of the tax in the aggregate. The addition to tax is applicable unless it is shown that the failure to file is due to reasonable cause and not due to willful neglect. Petitioners have not shown that *108 the late filings were due to reasonable cause. Respondent's determination that petitioners are liable for the addition to tax for late filing under section 6651(a)(1) is sustained. Based on the foregoing, Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners concede that they failed to report income of $ 1,861 in 1988, and are not entitled to deduct from Schedule C income payments made on loan guarantees by petitioner as general partner of Cleanitizing II, a limited partnership. Respondent recharacterized the payments as nonbusiness bad debt deductions and allowed them on Form 4797.↩