T.C. Memo. 2004-92

UNITED STATES TAX COURT

STEPHEN & DAWN DEL MONICO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9969-02.                    Filed April 5, 2004.

<u>Elizabeth A. Maresca</u>, Janelle Winston, and Judith Aarons,
for petitioners.

<u>William C. Bogardus</u>, for respondent.


MEMORANDUM OPINION

WOLFE, <u>Special Trial Judge</u>:  Respondent determined a
deficiency in petitioners' Federal income tax for 1999 in the
amount of $3,476.  References herein to petitioner in the
singular are to Stephen Del Monico.  The issues for decision are:
(1) Whether petitioner had unreported compensation income from

New Dimensions Distribution Services ("New Dimensions"), (2) whether New Dimensions withheld Federal income tax with respect to petitioner's unreported compensation income, and (3) whether petitioner's unreported compensation income constitutes self-employment income subject to the tax imposed by section 1401. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Some of the facts have been stipulated and are so found. When they filed their petition, petitioners resided in Pompton Lakes, New Jersey.

Petitioner was employed as a full-time dispatcher by New Dimensions, a New Jersey long-haul trucking company, from January 9 through August 27, 1999. Thereafter, under somewhat different circumstances, petitioner also performed services as a dispatcher for New Dimensions between August 28 and December 31, 1999. Petitioner's duties as a dispatcher included procuring loads to be hauled, scheduling pickups and deliveries, and monitoring the progress of the company's trucks. Petitioner also performed miscellaneous office work for New Dimensions. The terms under which petitioner performed services for New Dimensions never were set forth in a written agreement.

New Dimensions reported that it paid the following amounts to petitioner in 1999:  (1) Gross wages in the amount of $28,320, as reported on a Form W-2, Wage and Tax Statement (Form W-2), and (2) nonemployee compensation in the amount of $12,396, as reported on a Form 1099-MISC, Miscellaneous Income (Form 1099).  Petitioners reported the $28,320 in wages on their 1999 Federal income tax return, but they did not report the $12,396 in nonemployee compensation.  Petitioner claims that he did not receive a copy of the Form 1099.

The record clearly reflects that the $28,320 reported on the Form W-2 issued to petitioner represents income earned by the petitioner as an employee of New Dimensions between January 9 and August 27, 1999.  During this period, petitioner's paychecks were issued by Digit Payroll Corporation ("Digit"), the company that processed New Dimensions' payroll.  Copies of petitioner's weekly pay stubs from this period show that petitioner received a gross salary of $885 per week.  Petitioner's weekly net pay for this period was $737.28 after withholding for Federal and New Jersey State income taxes, Social Security, medicare, New Jersey disability and New Jersey unemployment compensation taxes.  There is no dispute as to the income reported on the Form W-2.

The unreported income at issue in this case was paid to petitioner during the final quarter of 1999, the 17 weekly pay

periods between September 3 and December 24, 1999 (referred to herein as the "disputed pay period").[1]  During the disputed pay period, petitioner received weekly paychecks of approximately $737.28 for most of the weeks in issue.  However, these paychecks were drawn from New Dimensions' general corporate account and were not processed through Digit.  In contrast to the paychecks issued by Digit, these paychecks were handwritten and issued without pay stubs or any kind of receipt indicating withholding for Federal or State income taxes or other required purposes.  Each paycheck on its face showed that the entire amount of the check was payable to petitioner and also contained a notation, such as "pay," "salary," or "dispatcher" indicating that the check was issued as compensation for services performed.

New Dimensions reported payment of $12,396 to petitioner during the disputed pay period as nonemployee compensation on a Form 1099 for 1999 and did not include this amount on petitioner's Form W-2 for 1999.  According to New Dimensions, petitioner and the company agreed to change petitioner's status from employee to independent contractor for the disputed pay

---

[1]The final weekly pay period of 1999 was the pay period ending December 31.  The corresponding pay date for this period occurred in January 2000 and is not considered income earned in 1999.

period.  Federal income tax was not withheld from petitioner's compensation during the disputed pay period.

Petitioners did not report the $12,396 in nonemployee compensation on their 1999 Federal income tax return.  By notice of deficiency issued on March 15, 2002, respondent determined a deficiency in the amount of $3,476, based upon an increase of $12,396 in gross income as reported by New Dimensions on the Form 1099 and the imposition of a tax under section 1401 on self-employment income (and the allowance of a corresponding deduction for one-half of the self-employment tax under section 164(f)).

In the petition, petitioners claim that petitioner remained an employee during the disputed pay period and thought that New Dimensions continued to withhold Federal income tax on his behalf.

Burden of Proof/Burden of Production

The Commissioner's determinations in a notice of deficiency are presumed correct, and generally, the taxpayer must prove those determinations wrong in order to prevail.  Rule 142(a)(1).

Section 7491 provides that the burden of proof may shift to the Commissioner if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining a tax liability, provided the taxpayer has substantiated all items at issue and has generally maintained books and records with

respect to the item at issue.  The Court finds it unnecessary to decide whether the burden of proof has shifted to the Commissioner under section 7491.  The record in this case is not evenly weighted.  Instead, in our view the evidence, including the credibility of witnesses, with respect to disputed facts is clear, and this circumstance allows us to render a decision on the merits based on the preponderance of the evidence, without regard to the burden of proof.

Under section 6201(d), the burden of production may shift to the Commissioner where information returns, such as Forms 1099, serve as the basis for the determination of a deficiency. If a taxpayer, in a court proceeding, asserts a reasonable dispute with respect to the income reported on an information return and fully cooperates with the Secretary (including providing access for inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), the Commissioner shall have the burden of producing reasonable and probative information in addition to such information returns.  Sec. 6201(d); see Tanner v. Commissioner, 117 T.C. 237 (2001), affd. 65 Fed. Appx. 508 (5th Cir. 2003); McQuatters v. Commissioner, T.C. Memo. 1998-88. Assuming, arguendo, that petitioner did fully cooperate with the Commissioner, the Court will examine whether the Commissioner has satisfied his burden of production under section 6201(d).

The Commissioner has produced numerous paychecks issued to petitioner by New Dimensions during the disputed pay period and copies of petitioner's bank statements in support of the Form 1099, but he acknowledges that several paychecks are missing. As set forth below, the Court finds that the bank statements are inconclusive, and the probative evidence supports only a finding that petitioner earned $9,847.36 of the $12,396 reported on the Form 1099. Accordingly, we conclude that the Commissioner has produced sufficient evidence to show that petitioner had unreported income in 1999 and has satisfied his burden of production to the extent of the paychecks produced in support of the Form 1099, but he has not completely substantiated the full amount reported on the Form 1099.

Unreported Income

Section 61 provides that income from whatever source derived, including compensation for services, must be included in gross income.

From the record in this case it is plain that petitioners must have realized that they were severely understating their income on their Federal income tax return for 1999. Even if we were to assume that petitioner did not receive a Form 1099 from New Dimensions, a cursory review of his Form W-2 from New Dimensions should have alerted petitioner to the fact that $28,320 only represented approximately two-thirds of his total

income from New Dimensions in 1999. Petitioner testified that he just assumed that the amounts reported on the Form W-2 were correct and said that he "didn't really scrutinize [it] more than taking a glance at it and giving it to my accountant." We think that a reasonable and prudent taxpayer in these circumstances would have noticed the discrepancy between the amount of income he earned and the amount reported on the Form W-2, and at least would have contacted New Dimensions to verify the accuracy of the company's information return. The difference between the amount on the Form W-2 and petitioner's actual receipts during 1999 was so great, and such a high proportion of his total income, that we consider his explanation entirely unbelievable. Consequently, it is our view that, without a satisfactory reason, petitioner reported on his Federal income tax return for 1999 far less income than he received during the year.

At trial, petitioner acknowledged receiving compensation throughout the disputed pay period. However, he claimed that the amount he actually earned and received was far less than $12,396.

Respondent produced copies of 15 relevant paychecks from the disputed pay period in support of the Form 1099, but respondent acknowledges that at least three checks are missing from the record. In sum, the 15 paychecks total $11,336.60, but

reimbursements for various business expenses were often commingled with petitioner's salary payments in these checks. Separating amounts specifically designated as reimbursements from these checks, these 15 checks total $9,847.36. Eleven of the 15 paychecks were issued for $737.28 (for a total of $8,110.08 in compensation). Other paychecks were paid in amounts less than petitioner's typical weekly salary of $737.28. For the pay period ending September 10, 1999, petitioner received a $400 paycheck dated September 16, 1999. For the pay period ending November 19, 1999, petitioner received a $600 paycheck dated November 26, 1999, with the following notation: "payment - did not come in full week." Petitioner's compensation for the pay period ending October 22, 1999, was paid with two separate checks dated October 22, 1999, for $200 and October 26, 1999, for $537.28 respectively. In sum, these 15 paychecks clearly show that petitioner earned and received at least $9,847.36 in compensation during the disputed pay period.

Paychecks for the pay periods ending October 15, 1999, October 29, 1999, and November 12, 1999, are missing from the record. Respondent claims that petitioner's bank statements are consistent with petitioner's receiving compensation for these three pay periods. However, we find that petitioner's bank statements are inconclusive since petitioner often did not deposit the full amount of his paychecks and because the account

was shared with his working wife. Respondent had the burden to produce probative evidence in support of the information return under section 6201(d), and, since it is plausible that the missing checks could have been due to petitioner's missing work without the benefit of sick leave, we decline to speculate as to income represented by the alleged checks that are not in the record.

We find that petitioner's gross income from New Dimensions for the disputed pay period was $9,847.36.

Credit for Income Tax Withheld

Income tax withheld from an individual's wages is allowed as a credit against the individual's income tax liability, even if the withheld tax is not actually paid over to the government by the employer. Sec. 31(a)(1); sec. 1.31-1, Income Tax Regs.

Petitioner argues that his paychecks of approximately $737.28 per week during the disputed pay period continued to represent a gross salary of $885 per week as an employee. Petitioner claims that although the checks do not include pay stubs indicating any type of withholding for Federal income tax, he believed that New Dimensions continued to withhold from his wages. As a result, petitioner claims that he is entitled to a credit for the tax allegedly withheld by New Dimensions from his wages under section 31(a)(1).

Petitioner's argument is not supported by the record. Regardless of whether New Dimensions properly classified petitioner as an independent contractor during this period (see below), petitioner has not introduced credible evidence that New Dimensions withheld income taxes from petitioner's paychecks. If an employer does not actually withhold taxes, the employee is not entitled to a credit for amounts which should have properly been withheld. Edwards v. Commissioner, 39 T.C. 78, 83-84 (1962), affd. on this issue 323 F.2d 751 (9th Cir. 1963); Goins v. Commissioner, T.C. Memo. 1997-521, affd. without published opinion 151 F.3d 1029 (4th Cir. 1998). The record indicates that New Dimensions intended to treat petitioner as an independent contractor for payroll purposes, and therefore did not withhold taxes. Petitioner's paychecks ceased to include pay stubs indicating that taxes were withheld, and New Dimensions did not report wages paid or payroll taxes withheld on its Form 941 for this period. New Dimensions accounted for petitioner's compensation on a Form 1099. Petitioner did not introduce any evidence, aside from his self-serving, uncorroborated testimony, in support of his claim that Federal income tax was being withheld from his pay during the disputed pay period. It is well established that this Court is not bound to accept a taxpayer's self-serving, unverified, and

undocumented testimony.  <u>Shea v. Commissioner</u>, 112 T.C. 183, 189 (1999).

## Self-Employment Tax

In addition to the income tax imposed by section 1, section 1401(a) imposes a tax upon a taxpayer's "self-employment income."  Section 1402(b) defines "self-employment income" as "net earnings from self-employment."  It is well established that earnings derived from work as an independent contractor are "self-employment income" subject to the self-employment tax. <u>Jackson v. Commissioner</u>, 108 T.C. 130, 133-134 (1997); <u>Turnidge v. Commissioner</u>, T.C. Memo. 2003-169.

Petitioner contends that he performed services for New Dimensions during the disputed pay period as an employee rather than an independent contractor and is not liable for a self-employment tax under section 1401(a).

Whether an individual is an employee or an independent contractor is a question of fact.  Secs. 3101, 3121(d)(2).  This Court has listed seven factors that should be considered in determining whether an individual is an employee:  (1) The degree of control exercised over the details of the work; (2) the individual's investment in the work facilities; (3) the individual's opportunity for profit or loss; (4) whether the work is part of the principal's regular business; (5) the principal's right to discharge the individual; (6) the

permanency of the relationship; and (7) the relationship the parties think they are creating. Ewens and Miller, Inc. v. Commissioner, 117 T.C. 263, 270 (2001); Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988). The factors should not be weighed equally but should be weighed according to their significance in the particular case. Aymes v. Bonelli, 980 F.2d 857, 861 (2d Cir. 1992); Youngs v. Commissioner, T.C. Memo. 1995-94.

We begin by noting that we received vastly different accounts from the parties regarding petitioner's relationship with New Dimensions during the disputed pay period. New Dimensions claims that petitioner's status changed from employee to independent contractor as a result of discussions between petitioner and Larry Pierreport, New Dimensions' co-owner and vice president. Andrea D'Acunto, New Dimensions' co-owner and president, testified that New Dimensions planned to terminate petitioner's services to help reduce the company's operating expenses.[2] In an effort to retain his job, petitioner volunteered to remain with the company as an independent contractor, and New Dimensions agreed. Under the terms of their new oral agreement, petitioner agreed to accept a gross weekly income of $737.28 (which equaled petitioner's previous net weekly salary after withholding) and forgo certain benefits,

---

[2]New Dimensions began experiencing financial difficulties in 1999, and the company filed for bankruptcy in August 2000.

such as sick leave, which petitioner previously received. Ms. D'Acunto also testified that petitioner specifically agreed that New Dimensions would not withhold any taxes from petitioner's paycheck, and that petitioner would "pay his own tax because we couldn't afford to do it anymore." Ms. D'Acunto testified that after he became an independent contractor, petitioner's job duties as a dispatcher did not change significantly except that petitioner began coming into work "when he felt like it" and was permitted to work from home and did so on some occasions.

Petitioner contends that he remained an employee throughout 1999 and was completely unaware of any changes to his status during the disputed pay period. In fact, petitioner flatly denies that anyone at New Dimensions had approached him about potentially losing his job or that he ever asked to change his status. Petitioner noticed that his paychecks during the disputed pay period ceased to include pay stubs indicating the withholding of taxes, but he testified that he did not worry about the change because he was assured by New Dimensions that "everything was going to remain the same." Petitioner argues that he believed that New Dimensions continued to withhold taxes from his paychecks during the disputed pay period. As for his typical work day, petitioner testified that his duties remained the same throughout the year, and that he consistently worked from 8 a.m. to 5:30 p.m. Petitioner characterized his

relationship with New Dimensions as a good business relationship, and he did not mention any changes in his status.

On this record, we find it difficult to believe that petitioner was completely unaware of the changes in the terms of his status. Not only were the petitioner's paychecks issued without pay stubs showing the withholding of taxes, but the paychecks reflect the loss of sick leave benefits during the disputed pay period. In particular, his paycheck dated November 26, 1999, for $600 contained the following notation: "payment - did not come in full week". Since there is no evidence that petitioner exceeded his allocated sick leave or paid vacation period, we believe that petitioner did lose certain employee benefits during the disputed pay period. Petitioner must have been fully aware of this change; workers generally do not ignore changes in benefits. Instead of receiving payroll checks with businesslike withholding stubs from a payroll service, petitioner started receiving handwritten checks. Some of them were dishonored by New Dimensions's bank, and then petitioner received makeup checks in amounts sufficient to cover the penalties. One check was marked: "pay + $78 Late Fee". Another check was for $200 payable to "Cash" and marked on its face: "Steve, towards pay - 10/22". Others covered compensation for petitioner as well as utility bills and bank payments. There is no possibility that petitioner was unaware of problems at New

Dimensions and changes in the way the company was conducting its business. Furthermore, we simply do not believe that petitioner did not carefully examine his Form W-2 and consider the amount of income he reported on his 1999 Federal income tax return in view of all the changes that occurred with his paychecks during the disputed pay period.

Because of the inconsistencies in petitioner's testimony, we decline to believe him where his testimony conflicts with other testimony or evidence concerning the terms of the work between petitioner and New Dimensions. We are not required to accept at face value a taxpayer's self-serving and uncorroborated testimony, particularly where other and better evidence concerning the point in question is available. Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Lewis v. Commissioner, T.C. Memo 1993-635.

We now address the seven factors mentioned above as they relate to the facts in the present case. As we mentioned above, these seven factors are not weighed equally, but should be weighed according to their significance in a particular case. Aymes v. Bonelli, supra; Youngs v. Commissioner, supra. In the present case, we are most influenced by the evidence that has persuaded us that the parties intended to enter into a principal-independent contractor relationship during the disputed pay period.

1.  Relationship the Parties Thought They Created

Petitioner and Ms. D'Acunto presented conflicting testimony in regard to petitioner's work relationship during the disputed pay period.  Ms. D'Acunto testified that New Dimensions and petitioner agreed to change petitioner's status from employee to independent contractor during the disputed pay period.  As we discussed above, we decline to accept petitioner's testimony that he was completely unaware of any changes in the terms of his relationship with New Dimensions.  The evidence in this case clearly shows that significant changes occurred in the parties' relationship, and these changes are consistent with petitioner becoming an independent contractor.  Petitioner's paychecks ceased to include pay stubs indicating the withholding of taxes, and the change in petitioner's paychecks is consistent with the loss of benefits and changes in the manner in which the company conducted its business.  We are convinced that the parties intended to create an independent contractor relationship for petitioner for the disputed pay period, and we believe this factor is of great significance.

2.  Degree of Control

In many cases, the principal's degree of control over the details of a taxpayer's work is the most important factor in determining whether an employee relationship exists.  Matthews

v. Commissioner, 92 T.C. 351, 361 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990); Youngs v. Commissioner, T.C. Memo. 1995-94.

In the present case, according to Ms. D'Acunto, a primary difference in petitioner's job during the disputed pay period was that petitioner basically set his own work hours and was allowed to work from home, which petitioner did on several occasions. Petitioner's hours were a source of significant tension between petitioner and New Dimensions. The nature of commercial trucking requires dispatchers to work early in the morning as the best loads are often procured early in the day on a first-come, first-served basis. According to New Dimensions' president, during the disputed pay period petitioner "more or less started to come in when he felt like it". This diminution in New Dimensions's control over petitioner's working hours was significant. Under these circumstances, we consider the degree of control factor inconclusive for purposes of determining petitioner's status as an employee or independent contractor during the brief disputed pay period.

3. Investment in Facilities

Petitioner generally worked at the office furnished by New Dimensions, but he was permitted to work from home during the disputed pay period. Overall, these circumstances support an employer-employee relationship since petitioner only worked from home on a small number of occasions.

4. <u>Opportunity for Profit or Loss</u>

Petitioner was paid a set salary by New Dimensions. However, New Dimensions was a small company, and petitioner testified that he believed that he would prosper if New Dimensions became a more successful company. Furthermore, petitioner, on several occasions, advanced business expenses on behalf of New Dimensions in order to help the company develop its business. Petitioner was repaid for these expenses. This factor tends to favor an employer-employee relationship, but its significance is mitigated by petitioner's own belief that he stood to prosper along with the company.

5. <u>Right To Discharge</u>

We do not believe that this is a significant factor, as either an employee or independent contractor, working under the circumstances of this case, could be terminated at will or could quit the company at will. We accord this factor little weight.

6. <u>Integral Part of Business</u>

Clearly, a dispatcher is an integral part of a trucking company's business. This factor favors a finding that petitioner was an employee.

7. <u>Permanency of the Relationship</u>

Petitioner was not hired on a job-by-job basis, and a dispatcher is necessary to the day-to-day operations of a trucking company. But there is no permanency of employment by a

company that is on the verge of bankruptcy. We believe it is fair to characterize the parties' agreement to change the petitioner's status from employee to independent contractor as a temporary arrangement resulting from the company's financial condition. We conclude that this factor favors a finding that petitioner was an independent contractor.

After a careful review of the record as a whole, we conclude that, as petitioner and New Dimensions intended, petitioner performed services as an independent contractor during the disputed pay period. Accordingly, we hold that the earnings in dispute are "net earnings from self-employment" for purposes of section 1402(a), subject to the tax imposed on "self-employment income" under section 1401(a).

To reflect the foregoing,

Decision will be entered

under Rule 155.