T.C. Memo. 2015-175

UNITED STATES TAX COURT

PATRICIA D. CLARK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27786-13.                    Filed September 9, 2015.

<u>Atyria S. Clark</u>, for petitioner.

<u>Cassidy B. Collins</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $1,472 in petitioner's Federal income tax for 2011.  After a concession by petitioner, the remaining issue for decision is whether she must recognize discharge of indebtedness income as a result of settlement of her account with AmeriCredit Financial Services, Inc. (AmeriCredit), d.b.a. GM Financial.  Unless otherwise

[*2] indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in California when she filed her petition.

On December 22, 1999, petitioner entered into a retail installment contract with an automobile dealership to purchase a used 1996 vehicle for $13,547. Petitioner made a downpayment of $1,000 and financed the remaining $12,547 at an annual rate of 21.5%, which resulted in a projected total sale price of $21,578.20. The contract required 60 monthly payments over five years starting January 21, 2000, and it included terms regarding late fees and the buyer's promise to pay.

The contract also provided as follows:

Sale of Repossessed Vehicle
If Seller repossesses the Vehicle, Seller can sell it and apply the money received to what Buyer owes. The sale will be governed by the Uniform Commercial Code and other applicable laws. If Seller repossesses or accepts the voluntary surrender of the Vehicle and the original price was $500.00 or more, and the balance remaining unpaid at the time of default is $300.00 or more, Buyer will be liable for any

[*3] deficiency incurred as a result of the sale or disposition of the Vehicle and Seller has the right to a deficiency judgment.

The contract also included a provision regarding the seller's ability to assign all rights of the contract and included Frank Leta Honda's assignment of the contract --without recourse--to AmeriCredit. As the buyer, petitioner signed the contract, agreeing with all of its terms.

By 2005 petitioner had defaulted under the terms of the contract. The vehicle was repossessed on March 21, 2005, and sold for $1,300 at an auction on June 16, 2005. The proceeds from the auction were applied to petitioner's account on June 20, 2005. However, petitioner still owed $4,768.79 on the contract and $743.50 for collection expenses and late fees. AmeriCredit sent to petitioner a letter dated June 27, 2005, notifying her of the remaining amount owed and requesting that she make contact about payment before it resorted to debt recovery. The outstanding principal balance was $4,496.71 as of July 6, 2005.

AmeriCredit attempted to collect petitioner's debt and, over time, assigned it to five separate third-party debt collectors. The first debt collection agency was assigned petitioner's debt on May 18, 2006, and returned the assignment uncollected on September 22, 2006. The other four collection agencies experienced the same lack of success over the next four-plus years, with the last

[*4] debt collection agency returning the assignment as uncollectible on June 29, 2011.

AmeriCredit determined petitioner's chargeoff balance to be $4,602.46.  It reported on Form 1099-C, Cancellation of Debt, that petitioner's debt of $4,496.71 (the outstanding principal balance) was discharged on August 25, 2011.  The Form 1099-C indicated that petitioner was personally liable for the repayment of the debt.  The copy of Form 1099-C sent to petitioner was returned with the directive:

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

Petitioner timely filed her 2011 Form 1040, U.S. Individual Income Tax Return, but reported no income from discharge of indebtedness.  Atyria S. Clark prepared petitioner's 2011 return.

OPINION

The issue remaining for decision is whether petitioner had discharge of indebtedness income from AmeriCredit for 2011.  Income from discharge of indebtedness (also called cancellation of debt) is included in the general definition of gross income.  Sec. 61(a)(12).  The concept of discharge of indebtedness income is that a taxpayer has realized an accession to income--to the extent that she has been released from indebtedness--because assets previously offset by the

[*5] liability arising from the indebtedness have been freed. <u>Cozzi v. Commissioner</u>, 88 T.C. 435, 445 (1987) (citing <u>United States v. Kirby Lumber Co.</u>, 284 U.S. 1 (1931)).

Where an information return, such as Form 1099-C, serves as the basis for the determination of a deficiency, the burden of production may shift to the Commissioner. <u>See</u> sec. 6201(d); <u>Del Monico v. Commissioner</u>, T.C. Memo. 2004-92. If a taxpayer in a court proceeding asserts a reasonable dispute with respect to any item of income reported on an information return and has fully cooperated, then the Commissioner must produce reasonable and probative information concerning the deficiency in addition to the information return. Sec. 6201(d).

In her petition, petitioner alleged that AmeriCredit had received the full value of the vehicle when it was repossessed. She later alleged that the debt was nonrecourse, indicating that repossession of the vehicle would have satisfied it. Petitioner therefore disputes the cancellation of debt income.

In addition to the Form 1099-C, respondent produced evidence of petitioner's account payment history with AmeriCredit that showed an outstanding principal balance of $4,496.71 and a chargeoff balance of $4,602.46. Respondent also provided a copy of the installment contract, which stated that the seller (and

[*6] assignee) had the right to a deficiency judgment where the balance remaining unpaid at the time of default was $300 or more; thus the debt was recourse. Respondent's burden of production under section 6201(d), if that section applies, has been met.

Petitioner also argues that she was not notified that any debt had been discharged. The nonreceipt of a Form 1099-C, however, does not convert taxable income into nontaxable income. See Rinehart v. Commissioner, T.C. Memo. 2002-71, slip op. at 6.

Petitioner's alternative argument, based upon her understanding of the instructions for Form 1099-C, is that the debt should not have been deemed canceled in 2011 with the filing of Form 1099-C. Instead, she asserts, the cancellation actually occurred when AmeriCredit failed to receive payment on the debt over a 36-month period ended December 2008. It appears that petitioner is alleging that AmeriCredit is a creditor that is subject to this testing period.

In Cozzi v. Commissioner, 88 T.C. at 445, the Court stated:

> The moment it becomes clear that a debt will never have to be paid, such debt must be viewed as having been discharged. The test for determining such moment requires a practical assessment of the facts and circumstances relating to the likelihood of payment. Any 'identifiable event' which fixes the loss with certainty may be taken into consideration. [Citations omitted.]

**[*7]** Section 1.6050P-1(b)(2)(i)(H), Income Tax Regs. (in effect for discharges of indebtedness occurring after November 10, 2008), on which petitioner relies through the instructions of Form 1099-C, provides one such identifiable event, as follows:

> Date of discharge.--(1) In general.--Solely for purposes of this section, except as provided in paragraph (b)(3) of this section, indebtedness is discharged on the date of the occurrence of an identifiable event specified in paragraph (b)(2) of this section.
>
>     (2) Identifiable events.--(i) In general.--An identifiable event is--
>
> \*        \*        \*        \*        \*        \*        \*
>
>     (H) In the case of an entity described in section 6050P(c)(2)(A) through (C), the expiration of the non-payment testing period, as described in § 1.6050P-1(b)(2)(iv).

But cf. sec. 1.6050P-1, Proposed Income Tax Regs., 79 Fed. Reg. 61791 (Oct. 15, 2014) (proposing removal of section 1.6050P-1(b)(2)(i)(H), Income Tax Regs., effective as of the future date that this regulation is published as a final regulation in the Federal Register).

There is a rebuttable presumption that an identifiable event has occurred during a calendar year if a creditor has not received a payment on a debt at any time during a testing period ending at the close of the year. Sec. 1.6050P-1(b)(2)(iv), Income Tax Regs. The testing period is generally a 36-month period.

**[*8]** Id. Thus petitioner points to the last payment date--June 20, 2005 (the application of the proceeds from the auction of the vehicle)--and argues that the debt should have been reported as discharged on December 31, 2008, and not in 2011, the year in issue.

Respondent does not dispute that AmeriCredit is an appropriate entity for the nonpayment testing period, and the record is lacking for the Court to determine otherwise. Instead, respondent argues that because AmeriCredit took collection actions during the testing period, the presumption that an identifiable event occurred in 2008 is negated.

> Section 1.6050P-1(b)(2)(iv), Income Tax Regs., provides, in part:
>
> The presumption that an identifiable event has occurred may be rebutted by the creditor if the creditor (or a third-party collection agency on behalf of the creditor) has engaged in significant, bona fide collection activity at any time during the 12-month period ending at the close of the calendar year, or if facts and circumstances existing as of January 31 of the calendar year following expiration of the 36-month period indicate that the indebtedness has not been discharged. For purposes of this paragraph (b)(2)(iv)--
>
> (A) Significant, bona fide collection activity does not include merely nominal or ministerial collection action, such as an automated mailing;
>
> To rebut the presumption that an identifiable event occurred in 2008 (and

therefore the cancellation of debt income must be recognized for 2008),

**[\*9]** respondent relies on evidence in the form of an authenticated AmeriCredit business record that shows petitioner's debt was assigned at different times to five separate third-party debt collectors. While respondent has established that collection agencies were engaged, the evidence does not demonstrate what, if any, collection activities they undertook. Respondent has therefore failed to provide any evidence of any significant, bona fide activity that would indicate an active creditor and thus has failed to rebut the presumption that an identifiable event discharging petitioner's debt occurred in 2008. See Kleber v. Commissioner, T.C. Memo. 2011-233, slip op. at 10. Accordingly we hold that petitioner did not have any discharge of indebtedness for 2011 and therefore had no related income.

In reaching our decision, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.