T.C. Memo. 2006-44

UNITED STATES TAX COURT

SAMUEL A. COLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11968-04.                    Filed March 16, 2006.

Samuel A. Cole, pro se.

<u>Beth A. Nunnink</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $3,494 in petitioner's Federal income tax for 2001 and an addition to tax of $35 under section 6651(a)(1).  After concessions by respondent, the issues for decision are:

(1) Whether petitioner was a statutory employee in 2001 under section 3121(d)(3)(D);

(2) whether petitioner is entitled to deduct additional expenses in 2001;

(3) whether petitioner is liable for the 10-percent additional tax on his Individual Retirement Account (IRA) distribution under section 72(t)(1); and

(4) whether petitioner received $17 of interest from the Commonwealth of Virginia in 2001.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Knoxville, Tennessee, at the time that he filed his petition.

Petitioner was employed as a computer software consultant by Metamor Enterprise Solutions, Inc. (Metamor), until his position was eliminated and he was discharged on March 30, 2001. While working for Metamor, petitioner traveled from his home to temporary client sites to make sales presentations to businesses regarding computer software, prepare proposals for implementation of the software for the business, and, if it was purchased, implement the computer software. At times, petitioner's job with

Metamor entailed traveling long distances to these client sites. All travel or other expenses were subject to approval by Metamor. In the letter discharging petitioner, Metamor informed him that he would be reimbursed for any outstanding salary and vacation pay that had accrued, as well as any reasonable business expenses incurred on behalf of the company prior to his last day of employment. Additionally, petitioner was informed that his medical benefits would continue until March 31, 2001. While at Metamor in 2001, petitioner received $32,483.41 in wages. Income and payroll taxes were withheld from these wages.

Between August and October 2001, petitioner worked as a temporary employee, paid at an hourly rate of $16.50, for Robert Half International, Inc. (Robert Half). Robert Half provided temporary employees to companies. Robert Half would contact petitioner to inform him of a client with a project that would require someone with computer skills to complete. Those projects tended to be making presentations and implementing software. Once the project was completed, petitioner was available for a different project through Robert Half. Petitioner was required to have his time sheet signed by the client and sent to Robert Half each week for payment. While working for Robert Half in 2001, petitioner earned $4,760.25 in wages. Income and payroll taxes were withheld from these wages.

Because of the frequency of his travels during employment, petitioner leased a Cadillac Escalade (SUV) on September 30, 2000, for $654.94 a month for 36 months.  Between September 30, 2000, and March 30, 2001, petitioner paid $580.30 for insurance on the SUV.  While unemployed from March 31 through August 2001, petitioner continued to make lease payments on the SUV, and, between March 30 and September 30, 2001, petitioner paid $611.75 for insurance on the SUV.

On or about August 2, 2001, petitioner requested a distribution of $3,000 from his IRA funds with the Oppenheimer Trust Co. (Oppenheimer).  On or about November 30, 2001, petitioner requested an additional distribution of $1,000. Oppenheimer issued Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., to petitioner showing distributions in 2001 totaling $4,000.  Petitioner was 47 years old at the time of the distributions.

Petitioner purchased a house in Alexandria, Virginia, in 1999 and refinanced it in 2001.

Petitioner received interest of $17 from the Virginia Department of Taxation in 2001.

Petitioner electronically filed a Form 1040, U.S. Individual Income Tax Return, for 2001 reporting his status as married filing separately.  On Schedule C, Profit or Loss From Business,

attached to his tax return, petitioner claimed to be a statutory employee and reported income of $37,243 and expenses of $32,638 for a profit of $4,605. On his return, petitioner included the $4,000 distribution of IRA funds, but he did not include the 10-percent additional tax on the early distribution. Petitioner also included unemployment compensation of $2,208 and deductions, as claimed on Schedule A, Itemized Deductions, of $19,929. He did not report any interest income or State tax refunds on his return.

The Forms W-2, Wage and Tax Statement, issued by Metamor and Robert Half did not have the "Statutory employee" box checked. However, petitioner claimed to be a statutory employee when completing Form W-2 information for his electronically filed Form 1040 for 2001.

The Internal Revenue Service (IRS) sent a statutory notice of deficiency to petitioner on June 1, 2004. In the notice, the IRS disallowed petitioner's claim to be a statutory employee and transferred his wage income from the Schedule C to Form 1040 and disallowed the expenses claimed against that income. The notice explained:

> Since your employer did not indicate on Form W-2 that
> you were a statutory employee, we disallowed the
> expenses you claimed against that income on Schedule C
> or Schedule C-EZ. If you are not a statutory employee,
> you must include the income as wages on your tax
> return.

Additionally, the notice applied a 10-percent additional tax of $400 to petitioner's distribution from his IRA funds, because, according to the notice of deficiency, he did not roll over the distribution into another qualified retirement plan, he was not disabled, or he was not at least 59-1/2 years old at the time of the distribution. The notice also added the $17 of interest received from the Commonwealth of Virginia to petitioner's income.

OPINION

Statutory Employee

Statutory employees may report their compensation, less related expenses, as business income on Schedule C and thus may avoid limitations on deduction of employee business expenses and other itemized deductions reportable on Schedule A of individual income tax returns. See Prouty v. Commissioner, T.C. Memo. 2002-175; Hathaway v. Commissioner, T.C. Memo. 1996-389. An individual is a statutory employee under section 3121(d)(3) only if such individual is not a common law employee under section 3121(d)(2). Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 269 (2001). Whether an individual is a common law employee under section 3121(d)(2) is a question of fact. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-324 (1992); Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987),

affd. 862 F.2d 751 (9th Cir. 1988); <u>Simpson v. Commissioner</u>, 64 T.C. 974, 984 (1975).  Section 3121(d) provides:

> SEC. 3121(d).  Employee.--For purposes of this chapter, the term "employee" means--
>
> (1) any officer of a corporation; or
>
> (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; or
>
> (3) any individual (other than an individual who is an employee under paragraph (1) or (2)) who performs services for remuneration for any person--
>
>    *     *     *     *     *     *     *
>
> > (D) as a traveling or city salesman, other than as an agent-driver or commission-driver, engaged upon a full-time basis in the solicitation on behalf of, and the transmission to, his principal (except for side-line sales activities on behalf of some other person) of orders from wholesalers, retailers, contractors, or operators of hotels, restaurants, or other similar establishments for merchandise for resale or supplies for use in their business operations;
>
> if the contract of service contemplates that substantially all of such services are to be performed personally by such individual; except that an individual shall not be included in the term "employee" under the provisions of this paragraph if such individual has a substantial investment in facilities used in connection with the performance of such services (other than in facilities for transportation) * * *

Petitioner argues that he is a statutory employee under the definition in section 3121.  He summarized in his testimony that

he "was actually selling * * * computer software, and it was used for the operation of the businesses" to which he was making the sales presentation. Petitioner's employment does not fit the specific categories of exceptions listed in section 3121(d)(3)(D). The evidence shows that petitioner was a common law employee under section 3121(d)(2).

Some of the relevant factors used to decide whether an individual is a common law employee are: (1) The degree of control exercised by the principal over the details of the individual's work, (2) the individual's investment in facilities, (3) the individual's opportunity for profit or loss, (4) permanency of the relationship between the parties, (5) the principal's right of discharge, (6) whether the work performed is an integral part of the principal's business, (7) what relationship the parties believe they are creating, and (8) the provision of employee benefits. See Nationwide Mut. Ins. Co. v. Darden, supra at 323-324; NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258 (1968); Simpson v. Commissioner, supra at 984-985; Hathaway v. Commissioner, supra; see also sec. 31.3121(d)-1(c)(2), Employment Tax Regs. No one factor is determinative. Instead, all of the facts and circumstances of the relationship must be weighed. Nationwide Mut. Ins. Co. v. Darden, supra at 324; NLRB v. United Ins. Co. of Am., supra at 258; Ewens & Miller, Inc. v. Commissioner, supra at 270; Hathaway v.

<u>Commissioner</u>, <u>supra</u>.  The factors should not be weighted equally but should be weighted according to their significance in the particular case.  See <u>Del Monico v. Commissioner</u>, T.C. Memo. 2004-92.

The degree of control exercised by the principal over the details of the individual's work is one of the most important factors in determining whether a common law employment relationship exists.  <u>Clackamas Gastroenterology Associates, P.C. v. Wells</u>, 538 U.S. 440, 448 (2003); <u>Leavell v. Commissioner</u>, 104 T.C. 140, 149 (1995); see also <u>Hathaway v. Commissioner</u>, <u>supra</u>. All that is necessary is that the principal have the right to control the details of the individual's work.  <u>Ewens & Miller, Inc. v. Commissioner</u>, <u>supra</u>.

Petitioner, while working for Metamor and Robert Half, was directed to the clients, was told where he needed to go, and was told what needed to be done.  Petitioner was not allowed to travel to clients' sites or incur any expenses without Metamor's permission.  While at Robert Half, petitioner was required to turn in time sheets signed by the client stating that the work had been done satisfactorily.  Metamor and Robert Half both had the right to and did exercise a considerable degree of control over the details of petitioner's work.

Though petitioner testified that he worked from home, he has not presented any evidence that he made any expenditures to

establish a home office qualifying under section 280A or any other investment in business facilities. See Lewis v. Commissioner, T.C. Memo. 1993-635.

While working for Metamor, petitioner received a salary and was reimbursed for his traveling and for approved expenses. Robert Half paid petitioner an hourly rate that never changed in the time that he was there. The evidence shows no potential for risk of loss or opportunity for profit to petitioner.

Petitioner's position at Metamor was terminable at will, and he was, in fact, discharged. Petitioner's position at Robert Half was temporary. There was no permanency of either relationship.

Petitioner was a connection between the principal and the client at both Metamor and Robert Half. The work performed by petitioner was within the scope of the principal's business. Metamor was in the business of computer software, and petitioner made the sales presentations and proposals to implement the software. Robert Half was in the business of providing temporary employees to businesses, and petitioner was a temporary employee for computer businesses while at Robert Half. Therefore, petitioner was an integral part of each of the businesses.

It is apparent that petitioner's employers considered him a common law employee. The statutory employee box on the Forms W-2 provided by Metamor and by Robert Half was not checked.

Additionally, Metamor and Robert Half withheld income tax and applicable payroll taxes and did not issue Forms 1099 to petitioner.

Metamor's letter terminating petitioner referred to vacation and medical benefits and right to reimbursement for approved expenses.

None of the relevant factors discussed above supports petitioner's position. Considering all of the facts and circumstances, we conclude that petitioner was a common law employee of both Metamor and Robert Half under section 3121(d)(2) and was not a statutory employee under section 3121(d)(3). See Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263 (2001). Therefore, petitioner is not entitled to report his income and expenses on Schedule C.

Additional Expenses

A common law employee may report business expenses on Schedule A, subject to the limitations under section 67. See Lickiss v. Commissioner, T.C. Memo. 1994-103. An individual performing services as an employee may deduct expenses incurred in the performance of those services as miscellaneous itemized deductions on Schedule A only to the extent such expenses exceed 2 percent of the individual's adjusted gross income. Secs. 63(a), (d), 67(a) and (b).

The burden of showing a right to a claimed deduction rests with the taxpayer. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); see also Banker v. Commissioner, T.C. Memo. 1999-351. The taxpayer must establish that the expenses deducted are ordinary and necessary and must maintain records sufficient to substantiate the amounts of the deductions claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. If the taxpayer does not retain the required records, the burden of proof does not shift to respondent. Sec. 7491(a)(2)(A) and (B).

Petitioner claimed deductions for advertising expenses, bad debt expenses, car and truck expenses, mortgage interest, repairs and maintenance expenses, and supplies expenses on his Schedule C in 2001. Petitioner provided no substantiation for any advertising, bad debt, repairs and maintenance, or supplies expenses. Therefore, petitioner is not allowed to deduct any of these claimed expenses on his Schedule A for 2001.

Petitioner deducted mortgage interest of $14,803 on his Schedule A for 2001 and an additional amount on Schedule C. Respondent received information returns for petitioner showing total mortgage interest paid of $14,802 and allowed that amount on petitioner's Schedule A. Petitioner did not provide any evidence showing that the deductible amount should be greater than that allowed by respondent.

Petitioner claimed expenses of $9,252 for his SUV.  Because passenger automobiles are listed property under section 280F(d)(4)(A)(i), a deduction for automobile expenses requires additional substantiation.  Sec. 274(d).  A taxpayer must substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement the amount of such expense, the time and place of travel, and the business purpose of the expense.  Id.; see also sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Though petitioner provided substantiation of his monthly lease and insurance payments due on the SUV, he did not substantiate the business use of the SUV.  Petitioner takes the improbable position that all of his use of the vehicle was business.  He did not provide substantiation of times or dates of business use or mileage on the SUV for business use.  Because of his failure to provide any records of use, petitioner may not deduct the vehicle expenses in 2001.

10-Percent Additional Tax

Section 72(t) provides for a 10-percent additional tax on early distributions from a qualified retirement plan for the taxable year in which such amount is received.  Petitioner does not dispute that he received an early distribution from a qualified retirement plan in 2001.

The 10-percent additional tax, however, does not apply to certain distributions. Section 72(t)(2) sets forth specific exceptions. Those exceptions include, but are not limited to, distributions made on or after the date on which the employee attains age 59-1/2; distributions made to the employee to the extent such distributions do not exceed amounts paid for medical care; distributions to unemployed individuals for health insurance premiums; and distributions from certain plans for first home purchases. Sec. 72(t)(2)(A)(i), 72(t)(2)(A)(v), 72(t)(2)(B), 72(t)(2)(D), 72(t)(2)(F).

Petitioner seeks relief from the 10-percent additional tax on his IRA distribution based on hardship, medical expenses, payment of health insurance premiums, and a first home purchase. There is no exception under section 72(t) for financial hardship. See Arnold v. Commissioner, 111 T.C. 250, 255 (1998); Gallagher v. Commissioner, T.C. Memo. 2001-34; Deal v. Commissioner, T.C. Memo. 1999-352.

Petitioner argues that he falls within the exception for distributions made for medical expenses under section 72(t)(2)(B) because he was responsible for the health expenses of his minor dependent and spouse during his period of unemployment. No medical expenses were claimed on petitioner's Form 1040, and he did not file jointly with his spouse. Petitioner testified that, though there were medical and dental expenses, he could not "lay

hands on those records".  Because petitioner did not produce any records or other evidence showing medical expenses incurred in 2001 for himself or his dependent, he has not shown that the exception applies.

Petitioner argues that he falls within the exception for distributions made to unemployed individuals for health insurance premiums under section 72(t)(2)(D) because he was unemployed for 12 weeks during 2001 and "solicited for individual health insurance and was quoted health insurance premium [sic] over * * * $400.00 per month for a family plan to include his spouse and minor dependent child."  However, petitioner has not produced any evidence showing that he paid health insurance premiums during that time.  Therefore, this exception does not apply to petitioner.

Finally, petitioner argues that he falls within the exception for distributions made for qualified first-time home buyers under section 72(t)(2)(F).  "Qualified first-time homebuyer distribution" is any payment received by an individual to the extent that the distribution is used by the individual within 120 days to pay qualified acquisition costs with respect to a principal residence of a first-time home buyer.  Sec. 72(t)(8)(A).  Qualified acquisition costs are costs of acquiring, constructing, or reconstructing a residence.  Sec. 72(t)(8)(C).  A first-time home buyer is an individual who had no present

ownership interest in a principal residence during the 2-year period ending on the date of acquisition of the principal residence. Sec. 72(t)(8)(D)(i). The date of acquisition is the date into which a binding contract was entered or when construction or reconstruction of such a residence was commenced. Sec. 72(t)(8)(D)(iii).

Petitioner purchased his home in 1999 and refinanced it in 2001. Petitioner had a present ownership interest in his home during the 2-year period prior to 2001. Petitioner did not acquire, construct, or reconstruct a home in 2001. Therefore, this exception does not apply to petitioner.

Thus, the IRA distribution received by petitioner is subject to the 10-percent additional tax under section 72(t).

Interest Income

Gross income means all income from whatever source derived. Sec. 61(a). Under section 61(a)(4), interest is includable in gross income.

Petitioner does not dispute that he received $17 of interest income in 2001. Petitioner did not report any amounts received from the Virginia Department of Taxation on his 2001 Federal income tax return and, therefore, is liable for the deficiency caused by his failure to report the interest.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>