T.C. Memo. 2010-39

UNITED STATES TAX COURT

THOMAS & CAROL ROSATO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20353-08.              Filed February 25, 2010.

<u>Alan J. Garfunkel</u>, for petitioners.

<u>Shawna A. Early</u>, for respondent.

MEMORANDUM OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $56,471
and an accuracy-related penalty of $11,294 under section 6662(a)
in relation to petitioners' 2006 Federal income tax.  After a
concession by petitioners, the issues for decision are (1)
whether Thomas Rosato (petitioner) was an independent contractor,
statutory employee, or common law employee and (2) whether

petitioners are subject to the section 6662(a) penalty.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was submitted fully stipulated under Rule 122, and the stipulated facts are incorporated as our findings by this reference.  Petitioners resided in New York at the time the petition was filed.

Beginning in 1975 petitioner worked as a salesperson for O.C. Tanner (Tanner), a company headquartered in Salt Lake City, Utah, that provides products and services that assist companies with developing programs for recognizing and rewarding their employees.  Petitioner entered into an employment agreement with Tanner dated April 21, 1975, that detailed petitioner's sales territory in the New York City area.  Tanner also provided petitioner with a list of clients that he was not allowed to solicit, and  petitioner was not permitted to work as a salesperson for Tanner's competitors or other employers while he was acting as a salesperson for Tanner.  This noncompetition obligation was limited to the time petitioner was acting as a salesperson for Tanner.

The 1975 employment agreement identified petitioner as an "employee" of Tanner.  Terms of the employment agreement included:

> The Employee shall devote his full working time and his best efforts to the service of the Company in selling and promoting the Company's products in accordance with Company policies and under Company direction; and, during the term of this agreement, he shall not engage in outside business activities.  He shall have no authority to bind or obligate the Company in any way without prior written authorization from an official of the Company in Salt Lake City.

> *       *       *       *       *       *       *

> Any expense incurred by the Employee in excess of his expense allowance shall be paid by him; and the Employee shall not obligate the Company in any way for any of his expenses without prior written authorization by an officer of the Company in Salt Lake City, Utah.

> *       *       *       *       *       *       *

> The Employee is not authorized to and shall not handle any money or other forms of payment by customers unless specifically directed to do so by an official of the Company in Salt Lake City, Utah in special instances.

The employment agreement was supplemented with several addenda regarding compensation and expense allowances between 1976 and 1983.  In August 1984, Tanner advised its salespeople by letter that the company was adopting the principles of the Golden Rule within the employer-employee relationship, eliminating signed or unsigned written agreements and that

> As a first step * * * all contracts, whether signed or unsigned, are no longer necessary.

> The company intends to honor the terms of these agreements as they relate to your compensation, your

territory, and other general policy matters regarding your employment relationship with the company.

In the future, instead of stating policies in written contracts, the company will utilize letters, bulletins, staff memos, etc. to define company policies and explain company changes.

A letter dated November 26, 1984, from Tanner and addressed to petitioner, instructed him that by signing and returning a copy of this letter he acknowledged that his prior written agreement with the company was terminated and that he supported Tanner's new policies. Petitioner signed and dated the letter December 2, 1984. Tanner did not alter the relationship with petitioner or salespersons holding similar situations and intended to continue treating them as employees.

In a letter dated January 23, 2002, Tanner notified petitioner of "the conditions of your employment at O.C. Tanner" because of several concerns regarding petitioner's actions at work. These conditions included that petitioner attend monthly counseling sessions (some of which Tanner scheduled for petitioner), conduct weekly meetings, and provide corresponding written reports to Tanner. During 2006 petitioner continued to work as a salesperson for Tanner in New York, New York. Tanner required petitioner to attend company sales meetings and training sessions and expected petitioner to have a presence in the New York office. However, Tanner did not set petitioner's work hours or instruct him when to work, he could take days off as he chose,

and he could perform some of his sales work from home. According to Tanner, in 2006

> Mr. Rosato was expected to devote his working hours to the advancement of O.C. Tanner's interests. We also expected him to work solely for O.C. Tanner and not to engage in side businesses that competed with O.C. Tanner. Mr. Rosato was free to engage in other business activities (e.g., leasing real estate) so long as it was done on his own time. If Mr. Rosato had left O.C. Tanner, he would not be prohibited from working for a competitor, although we would have insisted he maintain OCT's confidences and trade secrets.

Tanner's understanding of the nature of its relationship with petitioner for the period of 1975 through 2006 was that at all times he was an at-will employee.

In addition to working as a salesperson for Tanner during 2006, petitioner managed Tanner's regional office in New York, New York. In this capacity, petitioner supervised salespersons, secretaries, and other administrative personnel in the New York regional office whom Tanner hired.

With respect to the New York office and its employees, Tanner and petitioner followed a cost-sharing arrangement based on a formula set forth by Tanner. Petitioner paid for a portion of his office, half of the cost of his personal secretary, and half of the cost of his own administrative assistant. Petitioner also paid commissions to other New York-based Tanner salespersons from the commissions that he received from Tanner. Petitioner had input regarding the hiring of these salespersons.

Petitioner was permitted to participate in Tanner's Retirement Plan for Sales Representatives and in Tanner's profit-sharing plan. During 2006 petitioner was included in Tanner's medical insurance plan, section 401(k) plan, group term life insurance plan, and unemployment insurance plan. Petitioner made contributions toward the cost of the medical insurance plan, to the section 401(k) plan, and to the group term life insurance plan.

Tanner outlined expense reporting requirements in the Monthly Regional Expense Report Instructions dated January 2006. Tanner's expense report instructions identified expenses that were considered reimbursable and nonreimbursable. Accordingly, petitioner submitted monthly expense reports to Tanner for reimbursement of operating expenses such as phone, utilities, postage, customer entertainment, office supplies, and meals. Petitioner did not receive reimbursements from Tanner for all of his business expenses related to sales efforts on behalf of Tanner.

Petitioner received a Form W-2, Wage and Tax Statement, from Tanner for 2006 that reported his income as "Wages, tips, other compensation". The Form W-2 also reported that Tanner withheld Federal and State income taxes and Social Security and Medicare taxes and that Tanner had established a section 401(k) plan

account for petitioner.  Tanner did not report that petitioner was a statutory employee on the Form W-2.

Petitioners jointly filed a Form 1040, U.S. Individual Income Tax Return, for 2006 and left blank line 7, "Wages, salaries, tips, etc."  On an attached Schedule C, Profit or Loss From Business, petitioner's wife reported profit from a "Real Estate Sales" business.  On another attached Schedule C, petitioner reported his principal business or profession as "Outside Sales" and reported gross receipts or sales of $468,378, the wage amount shown on the Form W-2 that Tanner issued. Petitioner checked the box on line 1 of his outside sales Schedule C, misrepresenting that his Form W-2 identified him as a statutory employee.  Petitioner did not claim expenses for the business use of a home on the Schedule C.

In the notice of deficiency, the IRS determined that petitioner was a common law employee and therefore was not permitted to report income and expenses on Schedule C.  The explanation in the notice stated:

> Only statutory employee income can be offset by expenses reported on Schedule C, Profit or Loss From Business, or Schedule C-EZ.  Since your employer did not indicate on Form W-2, Wage and Tax Statement, that you were a statutory employee, we cannot allow the expenses used to offset that income on Schedule C or Schedule C-EZ.

On the basis of this determination, the IRS reported petitioners' tax required to be shown on the 2006 return as

$126,216--$56,471 more than petitioners had reported.  The IRS
further determined that petitioners are liable for the accuracy-
related penalty under section 6662(a).

## Discussion

An individual performing services as an employee may deduct
expenses incurred in the performance of services as an employee
as miscellaneous itemized deductions on Schedule A, Itemized
Deductions, to the extent the expenses exceed 2 percent of the
taxpayer's adjusted gross income.  Secs. 62(a)(2), 63(a), (d),
67(a) and (b), 162(a).  Itemized deductions may be limited under
section 68 and may have alternative minimum tax implications
under section 56(b)(1)(A)(i).

An individual who performs services as an independent
contractor is entitled to deduct expenses incurred in the
performance of services on Schedule C and is not subject to
limitations imposed on miscellaneous itemized deductions.  A
statutory employee under section 3121(d)(3)(D) is not an employee
for purposes of section 62 and may deduct business expenses on
Schedule C.  See Rosemann v. Commissioner, T.C. Memo. 2009-185;
Rev. Rul. 90-93, 1990-2 C.B. 33.

Petitioners argue that in 2006 petitioner was an independent
contractor or statutory employee and is entitled to deduct
business expenses on Schedule C.  Respondent contends that
petitioner was a common law employee in 2006 and that

unreimbursed employee expenses are thus properly reportable on Schedule A, subject to the 2 percent of adjusted gross income limitation.

An individual qualifies as a statutory employee under section 3121(d)(3) only if the individual is not a common law employee pursuant to section 3121(d)(2). See Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 269 (2001); Rosemann v. Commissioner, supra. Section 3121(d) defines "employee", in pertinent part, as follows:

> (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of employee; or
>
> (3) any individual (other than an individual who is an employee under paragraph (1) or (2)) who performs services for remuneration for any person--
>
> *     *     *     *     *     *     *
>
> (D) as a traveling or city salesman, other than as an agent-driver or commission-driver, engaged upon a full-time basis in the solicitation on behalf of, and the transmission to, his principal (except for side-line sales activities on behalf of some other person) of orders from wholesalers, retailers, contractors, or operators of hotels, restaurants, or other similar establishments for merchandise for resale or supplies for use in their business operations;
>
> if the contract of service contemplates that substantially all of such services are to be performed personally by such individual; except that an individual shall not be included in the term "employee" under the provisions of this paragraph if such individual has a substantial investment in facilities used in connection with the performance of such services (other than in facilities for transportation), or if the services are in the nature of a single

transaction not part of a continuing relationship with
the person for whom the services are performed; * * *

Because an individual qualifies as a statutory employee only if
the individual is not a common law employee, we will first decide
whether petitioner was a common law employee of Tanner.

Although the income tax treatment of a taxpayer's trade or
business expense deductions under section 62(a) depends on
whether the taxpayer is "[performing] * * * services * * * as an
employee", subtitle A of the Internal Revenue Code does not
define "employee".  Under these circumstances, we apply common
law rules to determine whether the taxpayer is an employee.
Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-325 (1992);
Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. 60 F.3d
1104 (4th Cir. 1995).

Whether an individual is an employee must be determined on
the basis of the specific facts and circumstances involved.
Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225,
232 (1987), affd. 862 F.2d 751 (9th Cir. 1988); Simpson v.
Commissioner, 64 T.C. 974, 984 (1975).  Relevant factors include:
(1) The degree of control exercised by the principal; (2) which
party invests in the work facilities used by the worker; (3) the
opportunity of the individual for profit or loss; (4) whether the
principal can discharge the individual; (5) whether the work is
part of the principal's regular business; (6) the permanency of
the relationship; (7) the relationship the parties believed they

were creating; and (8) the provision of employee benefits.  See Avis Rent A Car Sys., Inc. v. United States, 503 F.2d 423, 429 (2d Cir. 1974); Ewens & Miller, Inc. v. Commissioner, supra at 270; Weber v. Commissioner, supra at 387.  We consider all of the facts and circumstances of each case, and no single factor is determinative.  Ewens & Miller, Inc. v. Commissioner, supra at 270; Weber v. Commissioner, supra at 387.

Although not the exclusive inquiry, the degree of control exercised by the principal over the worker is the crucial test in determining the nature of a working relationship.  See Clackamas Gastroenterology Associates, P.C. v. Wells, 538 U.S. 440, 448 (2003); Leavell v. Commissioner, 104 T.C. 140, 149-150 (1995).  To retain the requisite degree of control over a worker, the principal need not direct the worker's every move; it is sufficient if the right to do so exists.  Weber v. Commissioner, supra at 387; see sec. 31.3401(c)-1(b), Employment Tax Regs.

Relying on Hathaway v. Commissioner, T.C. Memo. 1996-389, petitioners assert that "Tanner's lack of control and lack of the right to control the manner and means by which petitioner solicited sales strongly supports a finding that petitioner was * * * not an employee of Tanner".  Unlike petitioner, the traveling salesperson in Hathaway was not required to attend sales meetings or maintain an office presence and was permitted to sell nonconflicting lines of merchandise from other companies.

Additionally, Tanner's January 2002 letter to petitioner that outlined "conditions of [petitioner's] employment" shows that petitioner had superiors at Tanner who oversaw and supervised his performance.

The fact that a worker provides his or her own tools, or owns a vehicle that is used for work, is indicative of independent contractor status. Ewens & Miller, Inc. v. Commissioner, supra at 271 (citing Breaux & Daigle, Inc. v. United States, 900 F.2d 49, 53 (5th Cir. 1990)). Additionally, maintenance of a home office is consistent with independent contractor status, although alone it does not constitute sufficient basis for a finding of independent contractor status. See Colvin v. Commissioner, T.C. Memo. 2007-157, affd. 285 Fed. Appx. 157 (5th Cir. 2008).

Petitioner and Tanner followed a cost-sharing arrangement with respect to the New York office. The record does not reflect the detailed terms of this arrangement. Further, although petitioner incurred additional expenses related to Tanner sales activities and hired a personal secretary and administrative assistant, it was his decision to incur these additional costs, and Tanner shared some of these expenses. Cf. Hathaway v. Commissioner, supra (salesperson not reimbursed for office space expenses and only provided minimal supplies from company such as order forms, sample swatches, and preaddressed envelopes).

Additionally, petitioner claimed that he worked from home on occasion, but he has not presented any evidence that he made expenditures to establish a home office qualifying under section 280A.  See Cole v. Commissioner, T.C. Memo. 2006-44; Lewis v. Commissioner, T.C. Memo. 1993-635.

The opportunity for profit or loss indicates nonemployee status.  Simpson v. Commissioner, supra at 988.  Earning an hourly wage or fixed salary indicates that an employer-employee relationship exists.  See Kumpel v. Commissioner, T.C. Memo. 2003-265.  Petitioner was not paid a fixed wage; and because he shared expenses with Tanner, he risked a net loss if his profits did not exceed his expenses.

Where the principal retains the right to discharge a worker, it is indicative of an employer-employee relationship.  See Colvin v. Commissioner, supra.  Tanner retained the right to discharge petitioner at will.

Petitioner's sales efforts were an integral part of Tanner's regular business of providing products and services relating to assisting companies with developing programs for recognizing and rewarding their employees.  Where work is part of the principal's regular business, it is indicative of employee status.  See Simpson v. Commissioner, supra at 989; Rosemann v. Commissioner, T.C. Memo. 2009-185.

Permanency of a working relationship is indicative of common law employee status. See Rosemann v. Commissioner, supra. The lengthy working relationship between Tanner and petitioner weighs in favor of petitioner's being a common law employee.

The record shows that Tanner considered petitioner a common law employee. Petitioner and Tanner did not have a written employment contract in place in 2006. However, after Tanner adopted the Golden Rule principle, the parties continued to honor the terms and conditions of the original employment contract, and in 2002 Tanner further mandated conditions that petitioner had to follow to maintain his position. The withholding of taxes is consistent with a finding that an individual is a common law employee. See Packard v. Commissioner, 63 T.C. 621, 632 (1975). Tanner provided petitioner a Form W-2 for 2006 and withheld Federal and State income taxes and Social Security and Medicare taxes from petitioner's pay.

Benefits such as health insurance, life insurance, and retirement plans are typically provided to employees. Weber v. Commissioner, 103 T.C. at 393-394. Petitioner participated in Tanner's medical insurance plan, section 401(k) plan, group term life insurance plan, and unemployment insurance plan. Tanner also reimbursed petitioner for business expenses according to outlined terms.

Considering the record and weighing the factors, we conclude that petitioner was a common law employee of Tanner in 2006. Thus petitioner is precluded from being a statutory employee pursuant to section 3121(d)(3). See Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 269; Rosemann v. Commissioner, supra.

Respondent determined that petitioners are liable for an accuracy-related penalty under section 6662(a) for 2006. Section 6662(a) and (b)(1) and (2) imposes a 20-percent accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations, or a substantial understatement of income tax. Section 6662(d)(1)(A) defines "substantial understatement of income tax" as an amount exceeding the greater of 10 percent of the tax required to be shown on the return or $5,000. A taxpayer is negligent when he or she fails "'to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Korshin v. Commissioner, 91 F.3d 670, 672 (4th Cir. 1996) (quoting Schrum v. Commissioner, 33 F.3d 426, 437 (4th Cir. 1994), affg. in part and vacating in part T.C. Memo. 1993-124), affg. T.C. Memo. 1995-46.

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is proper to impose penalties. Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority. Id. at 446-447.

Respondent determined that petitioners have an underpayment of tax that is attributable to a substantial understatement of income tax in 2006. Respondent contends that the amount of tax required to be shown on petitioners' 2006 tax return is $126,216 and the understatement of income tax is $56,741, which is greater than $5,000 and than 10 percent of the amount of tax required to be shown and thus is substantial. Furthermore, respondent asserts that when they received a Form W-2 from Tanner that reported petitioner's 2006 earnings as salary or wages and did not classify petitioner as a statutory employee, petitioners were put on notice that these earnings were not eligible for reporting on Schedule C. Respondent's burden of production has been met.

Petitioners argue that they are not liable for the section 6662(a) penalty because Hathaway v. Commissioner, T.C. Memo. 1996-389, "constitutes substantial authority on which * * * [petitioners] relied". Because the authority upon which petitioners rely is materially distinguishable from the instant case, it is not substantial authority for their erroneous position. See Antonides v. Commissioner, 91 T.C. 686, 703 (1988), affd. 893 F.2d 656 (4th Cir. 1990).

The accuracy-related penalty under section 6662(a) will not be imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1).  The decision as to whether a taxpayer acted with reasonable cause and in good faith is made by taking into account all of the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability.  Id.  This factor includes, in some circumstances, the taxpayer's reasonable and good faith reliance on the advice of a tax professional.  Id.

Petitioners' substantial understatement of income tax resulted from claiming deductions on Schedule C that were properly reportable on Schedule A.  Petitioners have failed to show that this position was taken with reasonable cause and in good faith within the meaning of section 6664(c)(1).  Petitioners do not argue that they reasonably relied on the advice of a professional, such as an accountant, to support their claim that they had reasonable cause for, and acted in good faith with respect to, any portion of the underpayment of tax for 2006.  See sec. 1.6664-4(b)(1), Income Tax Regs.  Furthermore, on their 2006 tax return, petitioners misrepresented petitioner's employee status as reported on the Form W-2 from Tanner.  Petitioners have

failed to establish that they are not liable for the accuracy-related penalty under section 6662(a).

We have considered all arguments made by the parties. To the extent not mentioned or addressed, they are irrelevant or without merit. To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.