T.C. Memo. 2012-286

UNITED STATES TAX COURT

ISIDORO RODRIGUEZ AND IRENE RODRIGUEZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10691-09.  Filed October 9, 2012.

Isidoro Rodriguez and Irene Rodriguez, pro se.

<u>Melissa E. Avrutine</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Chief Judge</u>:  Respondent determined a $13,675 deficiency in

petitioners' 2006 Federal income tax and a $2,735 accuracy-related penalty

**[\*2]** pursuant to section 6662(a).[1] The issues for decision are: (1) whether during 2006 petitioner Isidoro Rodriguez was an employee or an independent contractor with respect to legal services he provided to law firms that were clients of two legal staffing agencies; (2) whether petitioners are entitled to deduct certain alleged business expenses; and (3) whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a).[2]

FINDINGS OF FACT

The parties have stipulated some facts which are incorporated by this reference.

Isidoro and Irene Rodriguez, husband and wife, are U.S. citizens. They resided in Virginia when they filed their petition.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2]As a result of respondent's determinations with respect to petitioners' income, modified adjusted gross income, and tax, respondent also made computational adjustments to petitioners' claimed education and child tax credits. We expect these computational adjustments to be revised in the Rule 155 computation in accordance with this opinion.

**[*3]** I.  <u>The Law Offices of Mr. Rodriguez</u>

A.  <u>Background</u>

Since 1987 Mr. Rodriguez has maintained and operated, as a sole proprietorship, a law office in Barranquilla, Republic of Colombia (Colombia). Upon her marriage to Mr. Rodriguez in 2000 and after becoming a licensed attorney in Colombia, Mrs. Rodriguez became a coequal proprietor of the law office.  This law office provides legal services to nonresident U.S. citizens and non-U.S. citizens before U.S. Federal courts.  In 2006 Mrs. Rodriguez managed the law office's four employees, controlled its finances, and provided legal services to its clients.

Petitioners have a second law office and law library in Santa Veronica, Colombia, providing legal services to clients residing in the city of Cartagena, Colombia, and the Republic of Panama.  The property on which this law office is situated includes gardens, a swimming pool, and living quarters in a separate building.

In 2000, because of increasing violence in Colombia and the threat of kidnapping of U.S. citizens, petitioners moved to Virginia.  They continued to maintain and operate their law offices in Colombia.  In 2006 they established a home law office in Annandale, Virginia, to represent clients.  This home office

**[*4]** occupied a 3,060-square-foot space within their 9,180-square-foot home. Petitioners' lease on their Annandale home commenced on May 13, 2006, and ran through May 31, 2007. During 2006, before May 13, petitioners also resided in Alexandria, Virginia, but did not have a home office there.

In 2006 Mrs. Rodriguez worked as a full-time paralegal with the law firm of Kennedy & Dolan in Silver Spring, Maryland.

### B. Mr. Rodriguez's Disbarment

In November 2006 the Virginia State Bar Disciplinary Board (board) revoked Mr. Rodriguez's license to practice law in Virginia. On December 16, 2006, Mr. Rodriguez began civil litigation to pursue judicial review of the board's order. In November 2007 the Supreme Court of Virginia affirmed the board's order, and the Supreme Court of the United States subsequently denied certiorari.[3]

## II. Temporary Legal Staffing Agencies

From 2000 to 2006 Mr. Rodriguez intermittently provided temporary legal services to law firms. As described in more detail below, in 2006 LegalSource

---

[3]We take judicial notice that after being disbarred in Virginia Mr. Rodriguez was also disbarred by this Court. He unsuccessfully appealed his disbarment by this Court to the U.S. Court of Appeals for the D.C. Circuit. Rodriguez v. United States Tax Court, 398 Fed. Appx. 614 (D.C. Cir. 2010). We also take judicial notice that in 2010 Mr. Rodriguez was disbarred by the Supreme Court of the United States. In re Disbarment of Rodriguez, 130 S. Ct. 3352 (2010).

[*5] Corp. (LegalSource) and Update Legal (Update) engaged Mr. Rodriguez as a temporary contract attorney to work on short-term projects for their clients.

LegalSource and Update (collectively, agencies) are temporary staffing agencies that provide attorneys, paralegals, and litigation support staff to law firms and corporate legal departments.[4] To obtain work through either of the agencies, an attorney is required to submit an application and participate in an interview with the agency. The agencies either assign their temporary contract attorneys to specific client projects or else allow their clients to choose specific attorneys from lists the agencies provide. Both agencies consider their temporary contract attorneys to be at-will employees, dischargeable at the agencies' discretion.

A. LegalSource

In 2000 Mr. Rodriguez began working on short-term legal projects through LegalSource. In 2006 LegalSource assigned Mr. Rodriguez to perform temporary legal services for one of its clients, the law firm of Howrey LLP (Howrey), in Howrey's Virginia office. This assignment lasted from about January 2 to October 27, 2006; i.e., shortly before Mr. Rodriguez's disbarment in Virginia. Mr. Rodriguez worked on temporary litigation projects at Howrey, such as electronic

---

[4]LegalSource is in Washington, D.C. Update is headquartered in New York, N.Y., and has offices in various cities, including Washington, D.C.

**[*6]** discovery document review. LegalSource considered Mr. Rodriguez to be its employee.

Mr. Rodriguez was compensated by LegalSource for his services at Howrey on an hourly basis, including overtime pay. LegalSource determined Mr. Rodriguez's rate of pay. Neither LegalSource nor Howrey authorized bonuses, vacation pay, or personal leave, nor did they provide Mr. Rodriguez with health insurance or other benefits such as the opportunity to participate in a section 401(k) plan. Neither LegalSource nor Howrey reimbursed Mr. Rodriguez for his expenses of bar admission, legal education, cell phones, law office books or equipment, or any other items.

Mr. Rodriguez entered into a conflicts and confidentiality agreement with Howrey and was under the control of their staff while working there. Howrey's staff coordinated Mr. Rodriguez's work schedule; they were aware that he maintained his own law offices and required time to provide legal services for other clients and to conduct his own litigation.

Mr. Rodriguez performed his assignments for Howrey at its Virginia offices. Howrey hired, supervised, and paid all persons who assisted Mr. Rodriguez in performing his work there. Howrey also provided all computer equipment, software, and other office supplies necessary for Mr. Rodriguez to

**[\*7]** fulfill his duties there. Howrey's full-time supervising attorneys assigned, reviewed, and approved Mr. Rodriguez's work product and signed his "Temporary Agency Time Sheet", indicating the hours he worked and reflecting the projects accomplished in those hours. Howrey forwarded the timesheets to LegalSource to pay his wages.

LegalSource issued Mr. Rodriguez's paycheck for his services at Howrey. The pay stubs list Mr. Rodriguez as "Employee" and designate Howrey as the "Earning Company" for the particular "Assignment" for which the wages were paid.

For 2006 LegalSource issued Mr. Rodriguez a Form W-2, Wage and Tax Statement, identifying itself as "Employer" and Mr. Rodriguez as "Employee". The Form W-2 shows "Wages, tips, other comp." of $59,220, representing amounts LegalSource paid Mr. Rodriguez for services he performed at Howrey in 2006. The Form W-2 shows amounts withheld for Federal and State income taxes, employment taxes, and Medicare taxes. Box 13, "Statutory employee", is left blank on the Form W-2.

B. Update Legal

In 2006 Update assigned Mr. Rodriguez to perform temporary legal services for one of its clients, the law firm of Winston & Strawn LLP (Winston & Strawn),

[*8] in Washington, D.C.  This assignment lasted from about November 20 to December 15, 2006.

Mr. Rodriguez worked at least 40 hours a week at Winston & Strawn and was compensated on an hourly basis.  Update determined his rate of pay.  He received overtime pay for work over 40 hours per week.  Neither Update nor Winston & Strawn paid Mr. Rodriguez any bonus, vacation pay, or compensation for personal leave time.[5]  Nor did they reimburse or pay Mr. Rodriguez for his expenses of bar admission, legal education, cell phones, law office books or equipment, or any other items.

Update considered Mr. Rodriguez to be its employee.  The employee handbook which Update provided him indicated that attorneys providing temporary services to Update's clients were Update's employees.  Update offered certain benefits, including health, dental, and vision insurance to temporary attorneys, commencing on the first day of the first new month in which the temporary attorney worked for Update.

---

[5]Update provided paid time off to employees with more than 400 hours of service and the opportunity to participate in a sec. 401(k) plan to employees who worked for the company longer than one year.  Mr. Rodriguez worked too few hours in 2006 to be eligible for these benefits.

**[\*9]** Having started with Update in mid-November 2006, Mr. Rodriguez became eligible for health insurance benefits on December 1, 2006.

Mr. Rodriguez entered into a confidentiality agreement with Winston & Strawn and was under the control of their staff while working there. Winston & Strawn's staff coordinated his work schedule; they were aware that he maintained his own law offices and required time to provide legal services for other clients and to conduct his own litigation.

Mr. Rodriguez performed his assignments for Winston & Strawn at their law offices. Winston & Strawn hired, supervised, and paid all persons who assisted Mr. Rodriguez in performing his temporary legal services there and provided all necessary office supplies and equipment. Winston & Strawn's full-time attorneys assigned Mr. Rodriguez to work on tasks such as reviewing discovery documents and preparing privilege logs. Winston & Strawn's full-time attorneys reviewed Mr. Rodriguez's work product and signed his timesheets indicating the hours he had worked and projects he had completed. Winston & Strawn forwarded the timesheets to Update to pay Mr. Rodriguez's wages.

Update issued Mr. Rodriguez's paychecks for his services at Winston & Strawn. The pay stubs list Mr. Rodriguez as "Employee" and do not mention Winston & Strawn.

**[\*10]**   For 2006 Update issued Mr. Rodriguez a Form W-2, identifying itself as "Employer" and Mr. Rodriguez as "Employee".  The Form W-2 shows "Wages, tips, other comp." of $9,984, representing amounts Update paid Mr. Rodriguez for services he performed at Winston & Strawn in 2006.  The Form W-2 shows amounts withheld for Federal and State income taxes, employment taxes, and Medicare taxes.  Box 13, "Statutory employee", is left blank on the Form W-2.

III.  2006 Tax Return

For 2006 petitioners jointly filed a Form 1040, U.S. Individual Income Tax Return.  They attached to the return a Schedule C, Profit or Loss From Business (Sole Proprietorship), labeling the activity the "Law Offices of Isidoro Rodriguez" with an address in Barranquilla, Colombia.  On the Schedule C petitioners reported gross receipts of $72,848 and total expenses of $66,016.[6]  Petitioners'

---

[6]Petitioners reported the following expenses on their 2006 Schedule C:

| Expense | Amount |
| --- | --- |
| Automobile | $913 |
| Travel | 3,021 |
| Meals & entertainment | 609 |
| Business use of home | 7,920 |
| Advertising | 127 |
| Depreciation and sec. 179 | 1,350 |
| Employee benefits | 4,990 |

(continued...)

[*11] Schedule C gross receipts consisted of $3,644 in self-employment income received by the Law Offices of Isidoro Rodriguez from the law offices' nonlitigation clients; $59,220 of income as reflected on the Form W-2 from LegalSource; and $9,984 of income as reflected on the Form W-2 from Update.[7]

---

[6](...continued)

| | |
|---|---:|
| Office administration | 2,298 |
| Insurance | 814 |
| Interest | 3,171 |
| Rent or lease--other business property | 6,000 |
| Repairs and maintenance | 1,299 |
| Supplies | 834 |
| Taxes & licenses | 1,502 |
| Utilities | 3,302 |
| Wages & benefits | 10,567 |
| Filing fees & transcripts | 5,155 |
| Copies & litigation supplies | 4,942 |
| Professional dues & fees | 1,301 |
| Postage & delivery | 1,124 |
| Continuing legal education | 682 |
| Law book supplements and purchases | 977 |
| Employee legal education and data processing education course | 1,426 |
| Money transfer fees | 1,692 |
| Total | 66,016 |

[7]The only wages petitioners reported on line 7 of their Form 1040 was $42,800 of income reflected on a Form W-2 that Mrs. Rodriguez received from Kennedy & Dolan for her paralegal services. Petitioners reported no employment-related expenses on their Schedule A, Itemized Deductions.

[*12] IV.  Notice of Deficiency

In the notice of deficiency respondent reclassified all the amounts that Mr. Rodriguez received from Update and LegalSource, and which petitioners had reported on Schedule C, as wage income.  Respondent  also disallowed all of petitioners' reported Schedule C expense deductions.  The explanation for disallowing these deductions stated in full:

> Only statutory employee income can be offset by expenses reported on Schedule C,  Profit or Loss from Business, or Schedule C-EZ.  Since your employer did not indicate on Form W-2, Wage and Tax Statement, that you were a statutory employee, we can not allow the expenses used to offset that income on Schedule C or Schedule C-EZ.
>
> If this is incorrect, please send us a statement from your employer(s) verifying that you are a statutory employee.
>
> If you are not a statutory employee, you must include the income as wages on your tax return.  Allowable related expenses on Form 2106, Employee Business Expenses, can be claimed as an itemized deduction on Schedule A.

On the basis of these determinations, respondent also made computational adjustments to petitioners' claimed child tax and education credits.

OPINION

I.  Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's liability is presumed correct; the taxpayer bears the burden of proving that it is incorrect.

[*13] Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  In certain circumstances, the burden of proof shifts to the Commissioner if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's tax liability.  Sec. 7491(a)(1).  For reasons discussed in more detail below, insofar as the burden of proof is relevant to our analysis, we conclude that the burden of proof does not shift to respondent pursuant to section 7491(a).[8]

On brief petitioners contend that the burden of proof should shift to respondent because, they assert, respondent issued the notice of deficiency without conducting an investigation or audit.  As a general rule, this Court does not look behind a notice of deficiency to "examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations."  Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974); see Riland v. Commissioner, 79 T.C. 185, 201 (1982).  "[W]hat goes on during audits is immaterial to the de novo record on which we decide deficiency cases."  Kovacevich v. Commissioner, T.C. Memo. 2009-160, 2009 WL 1916351, at *11 n.6.  The rationale for this rule is that a trial before the Tax

---

[8]Respondent bears the burden of production with respect to penalties.  See sec. 7491(c).  We discuss this matter infra.

**[\*14]** Court is a de novo proceeding, and our decision is based on the merits of the record before us and not on the merits of the administrative record. <u>Jackson v. Commissioner</u>, 73 T.C. 394, 400 (1979); <u>Greenberg's Express, Inc. v. Commissioner</u>, 62 T.C. at 328.

Petitioners contend that in this case we should recognize an exception to these well-settled principles because, they assert, respondent's officers and agents engaged in criminal conduct by issuing the notice of deficiency in retaliation for litigation that Mr. Rodriguez had instituted with respect to his disbarment. The record does not support petitioners' allegations. The record convinces us that respondent issued the notice of deficiency because of discrepancies between the 2006 tax return that petitioners filed and the Forms W-2 that LegalSource and Update issued to Mr. Rodriguez. In any event, this Court has no jurisdiction to redress alleged criminal violations.

## II. Employment Classification

The principal issue for decision is whether petitioners correctly reported Mr. Rodriguez's business expenses on Schedule C as those of a self-employed individual rather than on Schedule A as itemized expenses, as respondent contends they should have. The distinction matters because Schedule A itemized

**[*15]** deductions are subject to various limitations that do not apply to Schedule C deductions.

More particularly, an individual performing services as an employee generally may deduct expenses incurred in the performance of such services as miscellaneous itemized deductions on Schedule A only to the extent the expenses exceed 2% of the taxpayer's adjusted gross income. Secs. 62(a)(2), 63(a), (d), 67(a) and (b), 162(a). Itemized deductions may be limited under section 68 and may have alternative minimum tax implications under section 56(b)(1)(A)(i).

Independent contractors and self-employed persons may report their compensation less related expenses as business income on Schedule C, thereby avoiding limitations on the deductibility of employee business expenses and other itemized deductions reportable on Schedule A. See Weber v. Commissioner, 103 T.C. 378, 386 (1994), aff'd, 60 F.3d 1104 (4th Cir. 1995); Feaster v. Commissioner, T.C. Memo. 2010-157. To be properly reported on Schedule C, a taxpayer's expenses must come from a trade or business of his or her own, other than that of being an employee. See Rosato v. Commissioner, T.C. Memo. 2010-39. For this purpose, a statutory employee under section 3121(d)(3)(D) is not an employee and may deduct business expenses on Schedule C. See Cole v.

**[\*16]** <u>Commissioner</u>, T.C. Memo. 2006-44.  Petitioners do not claim that Mr. Rodriguez was a statutory employee.

Petitioners argue that Mr. Rodriguez was an independent contractor or was self-employed in 2006 and is thereby entitled to deduct business expenses on Schedule C.  Respondent contends that in 2006 Mr. Rodriguez was the common law employee of the agencies and that his unreimbursed employee expenses with respect to these employers are thus properly reportable on Schedule A.[9]  As discussed below, we decide this issue by reference to the preponderance of the evidence and not by reference to the placement of the burden of proof.   Consequently, we need not decide whether pursuant to section 7491(a) the burden of proof should shift to respondent as to this issue.

Even though the income tax treatment of a taxpayer's trade or business expense deductions depends on whether the taxpayer is performing services as an employee, subtitle A of the Code does not define "employee".  <u>Rosato v. Commissioner</u>, T.C. Memo. 2010-39.  We apply common law rules to determine whether the taxpayer is an employee.  <u>Weber v. Commissioner</u>, 103 T.C. at 386.

---

[9]On brief respondent concedes that petitioners are entitled to certain Schedule C deductions with respect to their $3,644 in self-employment gross receipts.

**[\*17]** Whether a common law employer-employee relationship exists in a particular situation is a question of fact.  Id.

In determining whether a worker is a common law employee or an independent contractor, relevant factors include:  (1) the degree of control the principal exercises over the details of the work; (2) which party invests in work facilities used by the individual; (3) the opportunity of the individual for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; (7) the relationship the parties believed they were creating; and (8) whether the principal provides employee benefits.  See id. at 387; Schramm v. Commissioner, T.C. Memo. 2011-212.  No one factor is determinative; all the facts and circumstances of the relationship must be considered and weighed according to their significance in the particular case.  Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 270 (2001); Del Monico v. Commissioner, T.C. Memo. 2004-92.  In making the determination, a realistic interpretation of the term "employee" should be adopted, and doubtful questions should be resolved in favor of employment.  Breaux & Daigle, Inc. v. United States, 900 F.2d 49, 52 (5th Cir. 1990); see Donald G. Cave A Profl. Law Corp. v. Commissioner, T.C. Memo. 2011-48, aff'd, 109 A.F.T.R. 2d (RIA) 2012-1504 (5th Cir. 2012).

**[*18]** 1. <u>Degree of Control</u>

The degree of control that the principal exercises over the worker is the most important consideration in determining the nature of a working relationship. <u>See Clackamas Gastroenterology Assocs., P.C. v. Wells</u>, 538 U.S. 440, 448 (2003); <u>Cilecek v. Inova Health Sys. Servs.</u>, 115 F.3d 256, 260 (4th Cir. 1997); <u>Hawkins v. Commissioner</u>, T.C. Memo. 1993-350. Because a supervisor's control over a professional employee is generally more tenuous and general than the control over nonprofessional employees, a lesser degree of control may result in a finding of employee-employer status. <u>See Weber v. Commissioner</u>, 103 T.C. at 389-390; <u>Gamal-Eldin v. Commissioner</u>, T.C. Memo. 1988-150, <u>aff'd without published opinion,</u> 876 F.2d 896 (9th Cir. 1989). To possess a degree of control over a worker indicative of employment, the principal need not direct the worker's every move; it is sufficient that the principal has the right to do so. <u>See Weber v. Commissioner</u>, 103 T.C. at 388; sec. 31.3401(c)-1(b), Employment Tax Regs. Similarly, the principal need not set the worker's hours or supervise every detail of the work environment to control the worker. <u>Gen. Inv. Corp. v. United States</u>, 823 F.2d 337, 342 (9th Cir. 1987). Setting their own hours does not necessarily make workers independent contractors. <u>See United States v. Silk</u>, 331 U.S. 704, 716-

**[*19]** 718 (1947); <u>Gen. Inv. Corp. v. United States</u>, 823 F.2d at 342; <u>Ewens & Miller, Inc. v. Commissioner</u>, 117 T.C. at 270.

The agencies provided Mr. Rodriguez temporary job placements and directed him where to work. Mr. Rodriguez turned in time sheets to the agencies, which paid him on the basis of the hours he worked for the agencies' clients and at a rate that the agencies determined. The agencies directed Mr. Rodriguez to perform services required by their clients, in the manner dictated by their clients, who controlled the details of Mr. Rodriguez's work for them. These considerations are indicative of employment relationships between the agencies and Mr. Rodriguez. See <u>Cole v. Commissioner</u>, T.C. Memo. 2006-44 (citing similar considerations in finding that a temporary employment agency exercised a considerable degree of control over the taxpayer, who worked as a temporary employee for the agency).

2. <u>Investment in Facilities</u>

Mr. Rodriguez provided services to the agencies' clients in the clients' offices. Nothing in the record suggests that Mr. Rodriguez had any investment in these facilities or that he supplied the equipment he used while working there. This factor weighs in favor of common law employee status.

[*20] 3. <u>Opportunity for Profit or Risk of Loss</u>

The agencies paid Mr. Rodriguez at an hourly rate for the services he performed for their clients. He was not paid a bonus, and there is no evidence that he otherwise had any opportunity for profit or risk of loss in the services he provided. This factor weighs in favor of common law employee status.

4. <u>Right To Discharge</u>

The principal's retention of the right to discharge a worker is indicative of a common law employer-employee relationship. See <u>Weber v. Commissioner</u>, 103 T.C. at 391. The agencies considered Mr. Rodriguez an at-will employee and retained the right to discharge him at any time. This factor weighs in favor of common law employee status. See <u>Kumpel v. Commissioner</u>, T.C. Memo. 2003-265.

5. <u>Integral Part of Regular Business</u>

The work performed by Mr. Rodriguez, as one of many temporary employees, was within the scope of the agencies' businesses of providing their clients temporary employees and was also within the scope of those clients' businesses. This factor weighs in favor of common law employee status. See <u>Simpson v. Commissioner</u>, 64 T.C. 974, 985, 989 (1975); <u>Rosemann v. Commissioner</u>, T.C. Memo. 2009-185.

**[*21]** 6. <u>Permanency of Relationship</u>

A continuing relationship indicates an employment relationship, while a transitory relationship may be indicative of independent contractor status. <u>Ewens & Miller, Inc. v. Commissioner</u>, 117 T.C. at 273. Further, a relationship established to accomplish a specified objective is indicative of an independent contractor relationship. <u>See</u> <u>Ellison v. Commissioner</u>, 55 T.C. 142, 155 (1970).

In 2006 Mr. Rodriguez worked for about 10 months on a project for LegalSource's client, Howrey. He also worked for about four consecutive weeks for Update's client, Winston & Strawn. Although the record is somewhat vague in this regard, it appears that although Mr. Rodriguez may have performed other services for the agencies in other years, the services were intermittent and the projects were all short term. We find this factor to weigh in favor of independent contractor status. We note, however, that this factor alone is not sufficient to preclude a finding of common law employee status. <u>See</u> <u>Potter v. Commissioner</u>, T.C. Memo. 1994-356.

7. <u>Relationship Contemplated by the Parties</u>

Representatives from both agencies testified that they considered Mr. Rodriguez to be their employee. The agencies withheld income taxes,

[*22] employment taxes, and Medicare taxes from Mr. Rodriguez's wages. These actions are consistent with treating Mr. Rodriguez as a common law employee.

8. Provision for Employee Benefits

Provision of benefits such as health insurance, life insurance, paid vacations, and retirement plans are indicative of an employment relationship. Weber v. Commissioner, 103 T.C. at 393-394. LegalSource provided no such employee benefits to Mr. Rodriguez. With respect to LegalSource, this factor weighs in favor of independent contractor status.

Update offered its employees health, dental, and vision insurance as well as a section 401(k) plan. Mr. Rodriguez was eligible to enroll in Update's insurance plan and would have been eligible for its section 401(k) plan had he worked for Update for more than one year. With respect to Update, this factor weighs in favor of common law employee status.

9. Conclusion

On the basis of the preponderance of the evidence, taking into account all the facts and circumstances, we conclude and hold that Mr. Rodriguez was a common law employee of both of the agencies. Accordingly, Mr. Rodriguez's unreimbursed employee expenses with respect to these employers are properly reportable, if at all, as itemized deductions on Schedule A.

[*23] III.  Business Expense Substantiation

In the notice of deficiency respondent not only determined that petitioners had improperly reported alleged business expense deductions on Schedule C but also disallowed all the claimed deductions.  In this proceeding, respondent concedes that petitioners are entitled to certain of these deductions.[10]  Respondent does not argue that petitioners must claim these conceded deductions as itemized deductions on Schedule A.  Respondent having conceded that petitioners had $3,644 of Schedule C income from the Law Offices of Isidoro Rodriguez, we interpret respondent's position to be that allowable expenses with respect to that business are deductible on Schedule C.  The parties disagree as to whether petitioners have adequately substantiated additional expenses and who bears the burden of proof.

As previously indicated, the taxpayer generally bears the burden of proving the Commissioner's determinations erroneous.  Rule 142(a).  Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is

---

[10]Respondent concedes that petitioners are entitled to deductions of $384 for meal and entertainment expenses, $1,316 for home office expenses consisting of $975 for rent and $341 for home office utilities, $32 for office administrative expenses, $604 for utilities expenses, $1,252 for filing fees and transcripts, $564 for copies and litigation supplies, $423 for professional dues and fees, $168 for postage, $434 for continuing legal education expenses, $360 for law books and supplements, and $1,161 for money transfer fees.

[*24] entitled to any claimed deductions. INDOPCO v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The taxpayer bears the burden of substantiating the amount and purpose of each expense claimed as a deduction. See Higbee v. Commissioner, 116 T.C. 438, 440 (2001); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976). Taxpayers must maintain records relating to their expenses and must prove their entitlement to all claimed deductions, credits, and expenses. See sec. 6001; Rule 142(a).

Section 7491(a)(1) provides that if, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's proper tax liability, the Commissioner shall have the burden of proof with respect to that issue. Credible evidence is evidence the Court would find sufficient upon which to base a decision on the issue in the taxpayer's favor, absent any contrary evidence. See Higbee v. Commissioner, 116 T.C. at 442. Section 7491(a)(1) applies, however, only if the taxpayer complies with all substantiation and recordkeeping requirements under the Code and cooperates with the Commissioner's reasonable requests for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2)(A) and (B).

**[\*25]** For reasons discussed in detail infra, we have allowed on the basis of the preponderance of the evidence, the deduction of certain expenses beyond the amounts respondent conceded. For all other expenses, we conclude that petitioners have failed to substantiate, in amounts greater than respondent has conceded, the amounts and purpose of the disputed expenses claimed as deductions. Accordingly, section 7491(a) does not operate to shift the burden of proof to respondent, and the burden of proof remains with petitioners.[11]

---

[11]Although petitioners have not expressly raised this issue, we have also considered whether respondent's contention that petitioners have failed to substantiate the amounts and purpose of certain items claimed as business expense deductions should be treated as a "new matter" under Rule 142(a)(1), as to which respondent should bear the burden of proof, since the notice of deficiency does not expressly describe lack of substantiation as the basis of respondent's determination and respondent never amended his answer to expressly raise this ground. It is well settled that the Commissioner's determinations may be affirmed for reasons other than those assigned in the notice of deficiency, provided that the taxpayer has not been surprised and substantially disadvantaged in the presentation of his or her case because of the manner in which the statutory notice and pleadings were drawn. See Considine v. Commissioner, 74 T.C. 955, 964-965 (1980); Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973). We do not believe that petitioners have been surprised or substantially prejudiced in presenting evidence to substantiate the disputed deductions. To the contrary, the record shows that well before trial petitioners presented to respondent large quantities of documents that they rely upon in attempting to substantiate their claimed deductions. These materials are the subject of extensive stipulations between the parties, and petitioners adduced testimony at trial in an effort to substantiate the amounts and business purpose of the disputed deductions. Moreover, respondent's disallowance of the claimed deductions for lack of substantiation is implicitly within the ambit of the determination, which disallowed all the claimed Schedule C deductions. We

(continued...)

**[\*26]**   Section 162 generally allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943).  A taxpayer's general statement that expenses were incurred in pursuit of a trade or business is insufficient to establish that the expenses had a reasonably direct relationship to any such trade or business.  Ferrer v. Commissioner, 50 T.C. 177, 185 (1968), aff'd per curiam, 409 F.2d 1359 (2d Cir. 1969).  Personal expenses are generally not allowed as deductions.  Sec. 262(a).

When a taxpayer establishes that he or she has incurred deductible business expenses but is unable to substantiate the exact amounts, we can estimate the deductible amount, but only if the taxpayer presents sufficient evidence to

---

[11](...continued)
conclude that respondent's contentions as to lack of substantiation are, at most, a new reason for disallowing petitioners' Schedule C deductions rather than a new matter.  Consequently, no amendment to the answer was required, and the burden of proof remains with petitioners.  See Considine v. Commissioner, 74 T.C. at 966 (and cases cited thereat).

[*27] establish a rational basis for making the estimate. See Cohan v.

Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v.

Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274(d) supersedes the general rule of Cohan and precludes us from

estimating the taxpayer's expenses with regard to certain items. See Sanford v.

Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d

Cir. 1969). Section 274(d) imposes strict substantiation requirements for expenses

relating to, among other things, travel, entertainment, and "listed property",

including automobiles and other property used as a means of transportation. Sec.

280F(d)(4); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014

(Nov. 6, 1985). To deduct such items, the taxpayer must substantiate "by [either]

adequate records or by sufficient evidence corroborating * * * [his] own statement"

the amount of the expense, the business purpose of the expense, and the business

relationship to the taxpayer of the person using the property. Sec. 274(d)(4);

Beale v. Commissioner, T.C. Memo. 2000-158; sec. 1.274-5A(b)(1), Income

Tax Regs. To meet the "adequate records test", a taxpayer must maintain an

account book, a diary, a log, a statement of expense, trip sheets, or a similar

record prepared contemporaneously with the expenditure and documentary

evidence of certain expenditures, such as receipts or bills. See sec. 1.274-

[*28] 5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). In combination, these records must be sufficient to establish each element--amount, time and place, business purpose, and business relationship--of the expenditure for which a deduction is sought. See sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

In the absence of adequate records to establish each element of an expense under section 274(d), a taxpayer may alternatively establish an element: "(A) By his own statement, whether written or oral, containing specific information in detail as to such element; and (B) By other corroborative evidence sufficient to establish such element." Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985). In the case of listed property, these elements to be established are the amount of the expenditure; the amount of each business use; the date of the expenditure; and the business purpose. Sec. 1.274-5T(b)(6)(i)-(iii), Temporary Income Tax Regs., 50 Fed Reg. 46016 (Nov. 6, 1985).

1. Automobile Expenses

Petitioners claimed a deduction for $913 in automobile expenses related to a 1994 Ford Pinto that was in Colombia. The only substantiation petitioners provided was seven receipts, only three of which were legible and totaled $111. Petitioners did not provide any other documentary evidence or testimony to

**[\*29]** establish the amounts of expenditures, dates of business use of the vehicle, business purpose of such use, mileage for business use, or total mileage for all uses of the automobile.  Petitioners have not met the substantiation requirements of section 274(d) and may not deduct any automobile expenses.

2.  Travel Expenses

Petitioners claimed a deduction for travel expenses totaling $3,615, comprising the following:

| | |
|---|---|
| Virginia State Bar Hearing, Richmond, VA, 10/26-10/27 | $375 |
| VA Supreme Court, Richmond, VA--Rodriguez v. Davis | 291 |
| Trip to NY--meet possible client | 133 |
| Trip to NY--meet possible client | 202 |
| Trip to Barranquilla, Colombia, via NY | 1,116 |
| Trip to Barranquilla, Colombia, via NY | 1,149 |
| Tolls, gas, and bus to and from Santa Veronica | 349 |
| Total | 3,615 |

Of the $375 petitioners reported with respect to the Virginia State Bar (VSB) hearing, they provided legible receipts to substantiate $159 for a hotel.[12]  Of the $291 petitioners reported with respect to a hearing with the Virginia Supreme Court, they provided legible receipts to substantiate $177 for a hotel,  meals, tolls,

---

[12]Of the other receipts petitioners provided with regard to this expense, one is for a Domino's Pizza order that indicates that it was delivered to petitioners' home address in Annandale, Virginia.  The remaining receipts are illegible.

[30 ] and gas.[13] Of the $133 and $202 that petitioners reported for trips to New York, they provided legible receipts to substantiate tolls, gas, and meals of $150. Petitioners provided handwritten schedules indicating the dates and business purpose of travel for the above-mentioned business trips and are entitled to deduct a total of $486 ($159 + $177 + $150) in travel expenses on their Schedule C.

With respect to the remaining expenses petitioners reported for business travel to and within Colombia, petitioners provided some receipts but have not established a business purpose for the trips. The record does not establish that petitioners' trips to Colombia were for business purposes. One of the receipts provided by petitioners is for a $787 plane ticket for Mr. Rodriguez's son to travel from Colombia to New York.[14] Petitioners assert that the son traveled to New York to testify in a trial related to his alleged expulsion from the United States by the U.S. Government. This litigation is not related to petitioners' trade or business. Petitioners are not entitled to deduct any travel expenses apart from the $486 mentioned above.

---

[13]The remaining receipts submitted were illegible.

[14]The evidence of this ticket is an email written in Spanish.

**[*31]** 3. <u>Meals and Entertainment</u>

Of the $609 in meals and entertainment expenses petitioners reported, respondent concedes that they are entitled to deduct $384. As to the remaining $225 of expenses, petitioners provided no documentation or testimony to support them and thus are not entitled to deduct them.

4. <u>Expenses Related to Business Use of Home</u>

As a general rule, section 280A(a) denies deductions with respect to the use of a dwelling unit that the taxpayer used as a residence during the taxable year. Section 280A(c)(1)(A), however, permits the deduction of expenses allocable to a portion of a dwelling unit that the taxpayer used exclusively and on a regular basis as the principal place of business for a taxpayer's trade or business.

Respondent concedes that approximately one-third of petitioners' Annandale residence qualifies as a home office. On their 2006 Federal income tax return petitioners claimed home office deductions totaling $7,920, consisting of $4,533 for rent, $105 for insurance, and $3,282 for utilities. With respect to petitioners' claimed rent expense, respondent conceded a total of $975, consisting of $567 for June 2006 and $408 for September 2006. Petitioners' 2006 rental agreement for the Annandale residence calls for monthly rent payments of $1,700. One-third of this amount is $567, which coincides with the allocated business use

**[\*32]** of the residence and respondent's concession for petitioners' rent payment on June 1, 2006. Respondent provided no explanation for his calculation of $408 with respect to petitioners' September 1, 2006, rent payment, and does not make any argument on brief with respect to any of petitioners' other claimed rent deductions. Petitioners provided the first page of their residential lease as support for their $1,700 monthly rent payments on their Annandale residence. We find that petitioners have provided a rational basis for us to estimate the amount of their rent deduction. See Cohan v. Commissioner, 39 F.2d at 543-544. Petitioners rented the Annandale residence for approximately 7-1/2 months during 2006. Including the $975 respondent conceded for June and September, petitioners have substantiated $567 per month for this period, or $3,810.[15]

Petitioners provided an invoice for the $105 home office deduction they claimed for insurance. Petitioners have not established that this claimed expense related to their home office in their Annandale residence rather than their Alexandria residence, which did not have a home office.[16] Petitioners are not entitled to deduct the claimed insurance expense.

---

[15]This amount is equal to six payments of $567 for the months of June, July, August, October, November, and December 2006 and one payment of $408 for September 2006.

[16]The invoice is addressed to Mrs. Rodriguez at the Alexandria address.

[*33] On their Federal income tax return, petitioners claimed deductions totaling $3,282 for home office utilities. In the stipulations and on brief, petitioners increased this amount to $5,018. In support of these deductions petitioners provided invoices for home and cellular phones, water, electricity, and gas. Petitioners also claimed a deduction for Internet service but provided no documentation in support thereof. Of the $5,018 home office utility expense deduction petitioners claimed, respondent conceded a total of $341.[17]

Several water, electric, and gas invoices petitioners provided as substantiation relate to their Alexandria residence, which did not have a home office. These expenses are not deductible. Respondent conceded one-third of most amounts relating to the water, electricity, and gas invoices petitioners supplied with respect to their Annandale residence for 2006. Respondent did not, however, concede amounts for four such invoices totaling $309, one-third of which is $103. All of these invoices relate to petitioners' Annandale residence during 2006 and provide a rational basis for estimating the utility expense deduction relating to the home office for the months covered by the invoices. See Cohan v. Commissioner, 39 F.2d at 543-544.

---

[17]Respondent conceded various amounts paid to Washington Gas, Fairfax Water, and Dominion Virginia Power.

**[\*34]** On brief and by stipulation petitioners included a total of $3,809 for home and cellular telephone service in their claimed home office utility expenses. Under section 262(b) the cost of basic local telephone service with respect to the first telephone line provided to a residence is a personal expense and is not deductible. Cellular phones are listed property under section 280F(d)(4) and are subject to the strict substantiation requirements of section 274(d). Thus, the taxpayer must show "by [either] adequate records or by sufficient evidence corroborating * * * [his] own statement" the amount of the expense, the business purpose of the expense, and the business relationship to the taxpayer of the person using the property. Sec. 274(d)(4).

For their home telephone service petitioners provided only the first page for each monthly invoice. This documentation did not provide any detail as to what portion, if any, of each invoice related to charges in excess of those for the cost of basic local service for the first line provided to petitioners' Annandale residence. Other home telephone service invoices that petitioners provided related to their Alexandria residence, which did not have a home office.

Petitioners testified that they had one cellular phone for personal use and one for business. Both phones were billed on a single invoice each month. As with their home phone service, petitioners provided only the first page of each

[*35] monthly cellular phone invoice. This documentation does not provide sufficient detail to distinguish between charges for business and personal use and does not meet the strict substantiation requirements of section 274(d). Petitioners are not entitled to deduct any of their claimed expenses for home or cellular phone service. Petitioners are not entitled to deduct Internet service expenses because they did not provide adequate substantiation. We conclude that petitioners have sufficiently substantiated home utility expenses of $103 in addition to the $341 respondent conceded, for a total of $444.

Part of the expenses that petitioners claimed for repairs and maintenance of their home office related to the repair of an air conditioner. Petitioners provided a $475 canceled check dated August 5, 2006, issued to Air Express Appliance Co. Mrs. Rodriguez testified that the air conditioning repair was for the Annandale residence, and other evidence supports this testimony. We conclude that petitioners have adequately substantiated and are entitled to deduct one-third of the $475 air conditioning repair expense, or $158, as a home office expense.

In sum, including respondent's $1,316 in concessions, petitioners have substantiated $4,412 for their home office, consisting of $3,810 for rent, $444 for utilities, and $158 for the air conditioning repair. Section 280A(c)(5) limits a taxpayer's deductions for business use of a home to the amount by which the

[*36] activity's gross income from the taxpayer's business use of the home exceeds the sum of deductions which are allowable regardless of whether the taxpayer used the residence for business, such as mortgage interest and property taxes, plus deductions for expenses of the business which are not allocable to the business use of the residence. Tobin v. Commissioner, T.C. Memo. 1999-328. In other words, a taxpayer may not claim a deduction that would give rise to or increase a net loss from the business to which the deduction relates. Visin v. Commissioner, T.C. Memo. 2003-246, aff'd, 122 Fed. Appx. 363 (9th Cir. 2005). Additionally, section 280A(c)(5) provides that the taxpayer may carry forward any resulting disallowed deductions to the next year. See sec. 280A(c)(5) (flush language). Accordingly, the amount of allowable home office expenses that petitioners may deduct for 2006 or carry forward to 2007 will be computed under Rule 155.

5. Advertising, Depreciation, Employee Benefits, and Office Administrative Expenses

Petitioners claimed a deduction of $8,765 for advertising, depreciation, employee benefits, and office administrative expenses.[18] Petitioners did not

---

[18]This amount consists of: $127 for advertising, $1,350 for depreciation and sec. 179 expenses, $4,990 for employee benefits, and $2,298 for office administrative expenses.

[*37] provide sufficient documentation or testimony to substantiate these claimed expenses and are not entitled to any deductions with respect to these items apart from the $32 of office administrative expenses that respondent has conceded.

6. Insurance Expense

Petitioners claimed an $814 deduction for insurance expenses. On brief petitioners argue that they maintained insurance for: (1) one of the Colombian offices, (2) professional risk insurance for Mrs. Rodriguez, (3) car insurance for a Ford vehicle, and (4) "Irene Rodriguez Colombian pension". The substantiation that petitioners provided in support of these items does not match the descriptions or amounts of the expenses claimed.[19] In addition, petitioners did not provide any testimony or other evidence to substantiate these expenditures or to establish that they were not personal. Petitioners are not entitled to any deduction for these claimed insurance expenses.

7. Interest Expenses

Petitioners claimed a deduction of $3,171 for interest expenses, consisting of $1,434 for interest with respect to a life insurance loan, $571 for interest on a loan on a Florida condominium, $455 for interest on a car loan, and $711 for

---

[19]To support these expenses, petitioners submitted expense reports that are written in Spanish, as well as a bill from "Suramericana" that is also written in Spanish.

[*38] interest on office credit cards. On brief petitioners claim that the interest was paid on loans that they took out for "life insurance and short term credit to conduct litigation, purchase car to conduct business, and on business rental property of Rodriguez & Rodriguez". The documentation that petitioners provided consists of two insurance loan statements from the Knights of Columbus, one of which relates partially to 2005, an illegible receipt that petitioners claim is for interest paid on a loan for a Florida condominium, and a financing statement for a Ford Taurus, the interest on which does not correspond to the interest amount petitioners claimed. Petitioners provided no documentation or testimony to support the amount they claimed for interest on office credit cards.

With respect to petitioners' loans from the Knights of Columbus, petitioners have provided no testimony or evidence to establish that the funds borrowed were used for their business. Petitioners testified that the Florida condominium was used for personal purposes and have provided no testimony or other evidence to support a business use.[20] With respect to the Ford Taurus, petitioners provided no documentary evidence or testimony to establish the expense amount they claimed, the dates of business use of the vehicle, the business purpose of such use, the mileage for business use, and the total mileage for all uses of the vehicle. See sec.

---

[20]Mrs. Rodriguez testified that petitioners did not have an office in Florida.

**[\*39]** 274(d). In addition, petitioners provided no documentation to support their claimed interest on office credit cards. Petitioners are not entitled to any interest expense deductions.

8. Lease of Other Business Property Expense

Petitioners claimed a deduction of $6,000 in expenses for an alleged special assessment on their office in Barranquilla, Colombia. To support this deduction, petitioners provided a self-translated version of a mortgage release document dated May 31, 2004. In relevant part the document states that "Banco Commercial AV Villas declares that for office 313 of World Trade Center Building of Barranquilla-Tower A, it received the amount requested for release of mortgage of $16,473,000." Mr. Rodriguez's testimony with respect to the special assessment did not adequately explain its purpose or how it related to petitioners' law practice. Further, Mr. Rodriguez testified that the special assessment actually occurred in 1997. The mortgage release that petitioners rely upon to support the assessment indicates that the bank received the funds in 2004. Nothing in the record supports the amount of the assessment that petitioners have reported or establishes that the alleged expense was incurred during the year at issue. Petitioners are not entitled to any deduction for the alleged special assessment.

[*40] 9. <u>Repairs and Maintenance Expense</u>

Petitioners claimed a deduction of $1,299 for repairs and maintenance expenses, consisting of a total of $403 related to their Colombian law offices and $896 for air conditioning parts and labor. The only support that petitioners provided for these claimed expenses is a $475 canceled check dated August 5, 2006, made out to Air Express Appliance Co. We have already allowed a portion of this amount as a home office expense deduction for the repair of an air conditioner. Petitioners provided no additional evidence to support the remaining expenses reported and are not entitled to deduct them.

10. <u>Supplies Expense</u>

Petitioners claimed a deduction for $834 in supplies expenses. As support, petitioners provided two receipts and a credit card statement from Home Depot, a FedEx Kinkos receipt, and an additional receipt that is illegible. The Home Depot documentation petitioners provided includes numerous items that appear to be personal, and the FedEx Kinkos receipt does not include an adequate description of the purchased items. Petitioners have not shown that the expenses claimed have a business purpose and are not personal. Accordingly, petitioners are not entitled to any supplies expense deduction.

**[\*41]** 11.  Taxes and Licenses Expense

Petitioners claimed a deduction of $1,502 for taxes and licenses related to their Colombian law offices.  Most of the supporting documentation that petitioners provided relates either to their Florida condominium or to vehicles.  As previously mentioned, petitioners have not established a business use for their Florida condominium.  With respect to the vehicles, petitioners provided no documentary evidence or testimony to establish the dates of business use of the vehicles, the business purpose of such use, the mileage for business use, or the total mileage for all uses of the vehicles as required under section 274(d).  The remaining documentation that petitioners provided consists of handwritten notes indicating amounts allegedly paid for property taxes on the Colombian law offices.  These notes are insufficient to establish the amounts of the property taxes or that they were actually incurred.  Petitioners are not entitled to any deductions for taxes and licenses.

12.  Utilities Expense for Colombian Offices

Petitioners claimed a deduction of $3,302 for utilities related to their Colombian law offices. Petitioners provided sufficient supporting documentation for Internet service, long distance phone service, and international phone cards

[*42] totaling $620.  Respondent concedes $604 of this amount.[21]  Petitioners

provided no additional support for their remaining reported utility expenses for their

Colombian offices.  Accordingly, petitioners are entitled to deduct a total of $620

for utilities, including the $604 that respondent has conceded.

13.  Wages and Benefits

Petitioners claimed deductions totaling $10,567 for expenses relating to

"Salaries", "Unemployment Benefits", "Mid Year/End Year Benefits", "Paid

Vacation Benefits", and "Paid Leave".  A reasonable allowance for salaries or

other compensation for personal services actually rendered may be deducted under

section 162(a)(1) as an ordinary and necessary expense paid or incurred during the

taxable year in carrying on a trade or business.  Petitioners provided a summary

sheet of their 2006 monthly ledgers as well as a translation of the document from

Spanish into English prepared by Mrs. Rodriguez.  In addition, petitioners

provided monthly ledger sheets for January, February, March, April, May, July,

---

[21]Respondent conceded several individual expenses and added them together to arrive at a total of $589.  This was a computational mistake by respondent; the correct sum of all of the individual expenses conceded is $604.

Respondent conceded 12 months of Internet service at $21.95 per month for a total of $263.  The evidence submitted by petitioners indicates that they paid $21.95 in 11 of the 12 months of 2006 and $23.22 in July 2006, thus entitling them to a deduction of $265.

**[*43]** August, and September 2006. The monthly ledger sheets are in Spanish. Despite the language obstacle, it is clear that the summary sheet does not accurately summarize the monthly ledgers. The numbers and names of the categories listed on the summaries and the monthly ledgers do not match. Petitioners are not entitled to deductions because they have not provided sufficient documentation to establish the amounts of these claimed expenses or that they were actually incurred.

14. <u>Filing Fees and Transcripts</u>

Petitioners claimed a deduction of $5,155 for filing fees and transcript expenses related to litigation. On brief petitioners increased the amount claimed to $5,637. Petitioners provided supporting invoices and canceled checks for several of the reported expenses totaling $1,252, all of which respondent conceded. Petitioners also submitted receipts for tolls, gas, a rental car, and credit card statements which include charges for CVS, Shopper's Food, Toys 'R' Us, Quizno's, KFC, Walmart, and Amazon.com. Petitioners provided no testimony or other documentary evidence to establish that any of these expenses related to their business. To the extent that the receipts are for expenses that may relate to business travel, petitioners have not met the strict substantiation requirements of section 274(d). Lastly, petitioners submitted canceled checks made out to the

**[*44]** Department of Homeland Security. Petitioners did not provide testimony or documentary evidence establishing that these expenditures related to their business. Petitioners are therefore entitled to deduct only the $1,252 for filing fees and transcripts that respondent has conceded.

15. Copies and Litigation Supplies

Petitioners claimed a total deduction of $4,942 for copies and litigation supplies. Respondent conceded a total of $564 of these expenses. Of the total amount claimed, petitioners apportioned $3,779 to "paper, toner, copies, etc." Petitioners apportioned the remaining $1,163 among expenses related to one Virginia Court of Appeals case and five U.S. Supreme Court cases. Of the receipts petitioners provided to substantiate the $3,779 amount, several were for personal items, including a refrigerator, groceries, tropical fish, fish food, magazines, photographs, weed killer, and bottled water. Other receipts did not include sufficient descriptions to identify the items purchased. Apart from the amounts respondent conceded, petitioners did not sufficiently establish through documentary evidence or supporting testimony the expense amounts or that the expenditures related to their business. With respect to the remaining $1,163, petitioners provided no documentation or supporting testimony to substantiate the

[*45] expenses.  Petitioners are therefore entitled to deduct only the $564 respondent conceded for copies and litigation supplies.

16. Professional Dues and Fees

Petitioners claimed a $1,301 deduction for expenses related to professional dues and fees.  Of this amount, respondent conceded a total of $423 for bar dues and professional associations.  With respect to the remaining items, petitioners have either not provided documentation to substantiate that they incurred each particular expense or have not established a business purpose for expenses that appear to be personal.  Such items include dues for the National Rifle Association, the American Legion, Costco, and AAA.  Petitioners are entitled to deduct only the $423 that respondent has conceded for professional dues and fees.

17. Postage & Delivery

Petitioners claimed a total deduction of $1,124 for expenses relating to postage and delivery fees.  Petitioners provided receipts for several items that clearly related to their law practice, and respondent conceded most of these items for a total of $168.  Respondent did not concede $69 for a FedEx shipment of legal documents to petitioners' law office in Barranquilla, Colombia.  The shipment related to petitioners' law practice, and we conclude that they are entitled to deduct this item.  The remaining documentation that petitioners have provided

**[\*46]** includes receipts for shipments to Transunion, Virginia Tech University, Discover Card, and United Healthcare. In addition, several receipts are for shipments that were made in a year other than 2006 and shipped to unidentified individuals; the shipments included personal items, such as a guitar. Other than the items that respondent has conceded and the $69 FedEx shipment expense mentioned above, petitioners have either not provided documentation to substantiate that they incurred the particular expense or have not established a business purpose for what appear to be personal expenses. Including the expenses that respondent has conceded, petitioners are entitled to deduct $237 for postage and delivery fees.

18. Continuing Legal Education Expenses

Petitioners claimed a $682 deduction for continuing legal education (CLE) expenses. On brief they increased this amount to $690. Of this amount, respondent conceded $434. Respondent did not concede $226 that petitioners claimed for a VERSA CLE tape and $32 for what petitioners describe as "CLE Alien Act". With respect to the VERSA CLE tape, petitioners provided a credit card receipt for a payment made to VERSA for the amount claimed. The receipt, however, does not provide sufficient detail to establish what items were purchased. Petitioners have not established that the expenditure was related to

**[*47]** their business and not personal. Petitioners did not provide any documentation with respect to their expense claim for the "CLE Alien Act". Petitioners are entitled to deduct only the $434 that respondent has conceded for continuing legal education expenses.

19. Law Book Supplements and Purchases

Petitioners claimed a $977 deduction for law book expenses. Included in this amount is $596 which petitioners describe on brief as "Misc. Receipts". Petitioners provided no documentation or testimony to support the "Misc. Receipts" they claimed. Petitioners did, however, provide several receipts for law-related publications totaling $360, all of which respondent has conceded. The remaining items petitioners claimed include a geology textbook which Mrs. Rodriguez testified was for Mr. Rodriguez's son, a Time magazine subscription, a "To Kill a Mockingbird" DVD, and a book about military weapons. Petitioners have not established that any of these items were related to their business and not personal. Petitioners are entitled to deduct only the $360 that respondent has conceded for law book expenses.

20. Employee Legal Education and Data Processing Education Course

Petitioners claimed a $1,426 deduction related to an employee legal and data processing education course in Colombia. As support, petitioners provided

**[\*48]** two money transfer receipts, one for $50 and another for $40, that Mrs. Rodriguez sent to an individual in Colombia. Petitioners provided no documentation or testimony to establish that this money was used to pay for the legal and data processing education course for any employee. Petitioners are not entitled to any deduction for this claimed expense.

21. <u>Money Transfer Fees</u>

Petitioners claimed a $1,692 deduction for expenses related to money transfer fees. Of this amount, respondent conceded $1,161. Petitioners provided several receipts for money transfers to their Colombian law office that included items specifically designated as "fees", all of which respondent conceded. Petitioners also provided similar money transfer receipts that included a total of $44 of "Telex" fees, which respondent did not concede. These fees, like those items specifically designated "fees", were charged to complete the money transfers and are thus deductible. Petitioners are entitled to deduct, including the $1,161 that respondent has conceded, $1,205 for expenses related to money transfer fees.

IV. <u>Accuracy-Related Penalties</u>

Section 6662(a) imposes an accuracy-related penalty of 20% of any underpayment that is attributable to causes specified in subsection (b). Section 6662(b)(2) applies the penalty to any underpayment attributable to a "substantial

**[\*49]** understatement" of income tax, meaning that the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return for the tax year or $5,000. Sec. 6662(d)(1)(A).

Generally, the Commissioner bears the burden of production with respect to any penalty, including the accuracy-related penalty. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446. To meet that burden, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. Id. Once the Commissioner has met the burden of production, the taxpayer has the burden of proving that the penalties are inappropriate. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Respondent determined that petitioners are liable for a penalty under section 6662(a) because they substantially understated their income tax for the year at issue. The exact amount of petitioner's understatement will depend upon the Rule 155 computations, which we order below. To the extent that those computations establish that petitioner has a substantial understatement of income tax, respondent has met his burden of production. See Prince v. Commissioner, T.C. Memo. 2003-247.

**[\*50]** The amount of an understatement on which the penalty is imposed will be reduced by the portion of the understatement that is attributable to the tax treatment of an item (1) that was supported by "substantial authority", or (2) for which the relevant facts were "adequately disclosed in the return or in a statement attached to the return". Sec. 6662(d)(2)(B). Additionally, no penalty will be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. See sec. 6664(c)(1).

Petitioners have failed to show that they made adequate disclosures with respect to the relevant facts or that they had substantial authority or acted with reasonable cause and in good faith with respect to any portion of their underpayment. Accordingly, we hold that they are liable for the section 6662(a) penalty insofar as the Rule 155 computations show a substantial understatement of income tax.

In reaching the foregoing holdings, we have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.[22]

---

[22]On brief petitioners appear for the first time to request abatement of interest. In order for this Court to have jurisdiction over such a request, respondent must first

(continued...)

**[\*51]**  To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[22](...continued)
issue a notice of final determination under sec. 6404, and a Tax Court petition for review of that determination must be filed.  Sec. 6404(h)(1); Rule 280; Williams v. Commissioner, 131 T.C. 54, 55-56 (2008).  The record does not establish that respondent issued a notice of final determination under sec. 6404.  Accordingly, we do not have jurisdiction to determine whether petitioners are entitled to abatement of interest.